The STATE of Texas, Appellant,

v.

Jeffrey CERNY, Appellee.

No. 13–99–457–CR.

Court of Appeals of Texas,
Corpus Christi.

Aug. 31, 2000.

Josh McCown, Dist. Atty., Wharton, Robinson C. Ramsey, San Antonio, for State.

Richard L. Manske, Manske & Manske, Leland M. Irwin, El Campo, for appellant.

Before Justices HINOJOSA, CHAVEZ, and RODRIGUEZ.

## O P I N I O N

Opinion by Justice HINOJOSA.

Appellee, Jeffrey Cerny, was charged with the misdemeanor offense of driving while intoxicated. Appellee moved to suppress the evidence, claiming his "arrest and detention was made without a warrant contrary to Article I, Section 9 of the Texas Constitution and Chapter 14 of the Texas Code of Criminal Procedure," thus, rendering inadmissible all evidence subsequently obtained. The trial court granted the motion.

The State appeals, claiming the trial court erred in granting the motion. The State presents one issue for our review: May an officer stop, detain and arrest a suspect without a warrant for an offense he reasonably suspects has occurred in his presence, or within his view, regardless of whether the State is ultimately able to prove all the elements of the suspected offense? We affirm.

### A. JURISDICTION

The State may appeal the granting of a motion to suppress evidence if jeopardy has not attached in the case and if the prosecuting attorney certifies to the trial court that the appeal is not taken for the purpose of delay and that the evidence is of substantial importance in the case. TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(5) (Vernon Supp.2000). We conclude the State has met these prerequisites.

### B. STANDARD OF REVIEW

The amount of deference a reviewing court affords to a trial court's ruling on a "mixed question of law and fact" is often determined by which judicial actor is in a better position to decide the issue. *Guzman v. State*, 955 S.W.2d 85, 87 (Tex.Crim.App.1997). If the issue involves the credibility of a witness, thereby making the evaluation of that witness's demeanor important, compelling reasons exist for allowing the trial court to apply the law to the facts. *Id.* On the other hand if the issue is whether an officer had probable cause to seize a suspect, under the totality of the circumstances, the trial judge is not in an appreciably better position than the reviewing court to make that determination. *Id.* Although great weight should be given to the inferences drawn by trial judges and law enforcement officers, determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal. *Id.* (citing *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). In the context of driving while intoxicated investigatory detentions, the totality of the circumstances test is the current reasonableness standard for reviewing warrantless arrests. *Hulit v. State*, 982 S.W.2d 431, 432 (Tex. Crim.App.1998); *State v. Arriaga*, 5 S.W.3d 804, 805 (Tex.App.—San Antonio 1999, pet. ref'd).

The single witness to testify at the hearing on the motion to suppress was Texas Department of Public Safety Trooper Daniel Terronez. Terronez testified that he first noticed appellee's car when it "just barely" swerved across the center line into Terronez's lane of traffic. Terronez was not sure, but believed he was

parked on the side of the road completing a citation when he saw this happen. He then made a U-turn, began to follow appellee and turned on the video camera in his car. He observed appellee's car swerve "over" the solid white line separating the traffic lane from the right shoulder of the road three or four times. Terronez stopped the vehicle and asked appellee where he was coming from. Appellee stated he was coming from a birthday party. Terronez saw that appellee's eyes were glassy and noticed "a strong odor of alcoholic beverage." He asked appellee if he had been drinking, and appellee replied that he had drunk six beers. Terronez asked appellee to perform a horizontal gaze nystagmus test (a field sobriety test); the result indicated appellee was intoxicated. At that point, Terronez arrested appellee for driving while intoxicated and took him to the Wharton County Sheriff's Office for a breathalyzer test. The test indicated appellee was intoxicated.

On cross-examination, Terronez acknowledged that he did not remember whether he was driving toward appellee or sitting on the side of the road when he saw appellee's car cross the center line into Terronez's lane of traffic. Upon viewing a portion of the copy of the videotape recorded by his in-car camera, Terronez agreed that it shows the tires of appellee's car touching, but not going over the white shoulder line, but recalls that "at one point [portions of the tire] went over."[1] He followed appellee a very short time before turning on the video camera.

Terronez also agreed that his report states appellee "drove to the center lane divider," not that appellee crossed the center lane divider. Terronez did not stop appellee for any other reason than failure to maintain a single lane. On redirect, Terronez testified that driving on the right lane stripe is driving on the shoulder.

The State argued that Terronez observed appellee driving on the shoulder of the road, which is the traffic offense of "failure to maintain a single lane of traffic." Appellee's counsel argued that failure to maintain a single lane of traffic is a two-part offense requiring a driver to maintain a single lane and not move from that lane "unless that movement can be made safely," and that because there was nothing on the videotape or in Terronez's report or testimony to indicate that appellee's movement was unsafe, or that anyone was in danger, Terronez was not justified in stopping appellee for the traffic offense of failure to maintain a single lane of traffic. The trial judge granted appellee's motion to suppress at the conclusion of the hearing.

Terronez's testimony—that appellee crossed the white center line into the lane of oncoming traffic—contradicts his report that appellee drove "to" the center line. Terronez also testified that appellee drove "over" the white shoulder stripe, but the videotape showed appellee driving on a portion of the white shoulder stripe. Because the trial court was in a better position to determine the credibility and demeanor of this witness, we must defer to the court's determination of the historical facts leading up to appellee's arrest. *Guzman,* 955 S.W.2d at 87; *see also Loesch v. State,* 958 S.W.2d 830, 831 (Tex.Crim.App. 1997).

### C. Requirements for Warrantless Arrest

◼ Article I, Section 9 of the Texas Constitution prohibits unreasonable searches and seizures. A routine traffic stop closely resembles an investigative detention. *Berkemer v. McCarty,* 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). An investigative detention is a seizure. *Francis v. State,* 922 S.W.2d 176, 178 (Tex. Crim.App.1996); *Powell v. State,* 5 S.W.3d

---

1. Neither the videotape nor Terronez's report were admitted into evidence; therefore, neither are part of the record before us.

369, 375 (Tex.App.—Texarkana 1999, pet. ref'd), *cert. denied*, —— U.S. ——, 120 S.Ct. 1976, 146 L.Ed.2d 805 (2000). A police officer may stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks evidence rising to the level of probable cause. *Terry v. Ohio*, 392 U.S. 1, 29, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Woods v. State*, 956 S.W.2d 33, 35 (Tex. Crim.App.1997). The reasonableness of a temporary detention must be examined in terms of the totality of the circumstances and will be justified when the detaining officer has specific articulable facts, which taken together with rational inferences from those facts, lead him to conclude that the person detained is, has been or soon will be engaged in criminal activity. *Woods*, 956 S.W.2d at 38; *Hernandez v. State*, 983 S.W.2d 867, 869 (Tex.App.— Austin 1998, pet. ref'd).

■■■ A law enforcement officer may arrest an offender without a warrant for any offense committed in his presence or within his view. Tex.Code Crim. Proc. Ann. art. 14.01(b) (Vernon 1977). An officer may lawfully stop a motorist who commits a traffic violation. *McVickers v. State*, 874 S.W.2d 662, 664 (Tex.Crim.App.1993). However, in determining whether a traffic violation has been committed, the principles of *Terry* apply just as they do to other crimes. *Drago v. State*, 553 S.W.2d 375, 377–78 (Tex.Crim.App.1977); *Powell*, 5 S.W.3d at 376. When an officer stops a defendant without a warrant and without the defendant's consent, the State has the burden at a suppression hearing of proving the reasonableness of the stop. *Russell v. State*, 717 S.W.2d 7, 9–10 (Tex.Crim.App. 1986); *Hernandez*, 983 S.W.2d at 869.

### D. Offense of Failure to Maintain Single Lane of Traffic

Section 545.060(a) of the transportation code provides:

(a) An operator on a roadway divided into two or more clearly marked lanes for traffic:

   (1) shall drive as nearly as practical entirely within a single lane; and

   (2) may not move from the lane unless that movement can be made safely.

Tex. Transp. Code Ann. § 545.060(a)(Vernon 1999).

In *Hernandez*, a police officer stopped the appellant after observing him swerve eighteen to twenty-four inches from the right lane into the adjacent left lane of traffic going the same direction. *Hernandez*, 983 S.W.2d at 868–69. This did not cause an accident or a problem for any other vehicle. *Id.* The swerve in question was characterized as a slow drift over and back. *Id.* The Austin court of appeals held that a single instance of crossing a lane dividing line by eighteen to twenty-four inches into a lane of traffic traveling the same direction when the movement is not shown to be unsafe or dangerous does not give an officer a reasonable basis for suspecting that the appellant had committed a criminal traffic offense. *Hernandez*, 983 S.W.2d at 871. The court found that a violation of section 545.060 occurs only when a vehicle fails to stay within its lane and such movement is not safe or is not made safely. *Id.*

In *State v. Tarvin*, 972 S.W.2d 910 (Tex. App.—Waco 1998, pet. ref'd), a police officer stopped Tarvin after observing his car drift two or three times to the right side of a two-lane road, causing his tires to go over the solid white line at the right-hand side of the road. *Id.* at 910–911. The Waco court of appeals upheld the trial court's granting of Tarvin's motion to suppress, holding that his driving did not provide a reasonable suspicion of criminal activity: "Although mere weaving in one's own lane of traffic can justify an investigatory stop when that weaving is erratic, unsafe, or tends to indicate intoxication or other criminal activity, there is nothing in the record to show that [the officer] be-

lieved any of the above to be the case." *Id.* at 912.

We agree with the reasoning of *Hernandez* and *Tarvin.* In the instant case, the testimony establishes appellee was weaving somewhat within his own lane of traffic. However, there is no evidence that his actions were unsafe. Following the reasoning of *Hernandez* and *Tarvin,* we conclude the evidence does not support a finding that Terronez had a reasonable belief that appellee violated section 545.060 of the transportation code. Terronez did not articulate any other justification for stopping appellee.

We hold the officer did not articulate facts sufficient to support a reasonable suspicion to detain appellee. We further hold appellee's detention and warrantless arrest were illegal. We overrule the State's sole issue.

We affirm the trial court's order granting appellee's motion to suppress.