In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-00-00225-CR


______________________________




DONALD RAY BASS, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 124th Judicial District Court


Gregg County, Texas


Trial Court No. 27505-B




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Justice Ross


Dissenting Opinion by Chief Justice Cornelius


O P I N I O N



 Donald Ray Bass was convicted of possessing more than four ounces but less than
five pounds of marihuana and sentenced to one year of imprisonment. A deputy sheriff
stopped Bass as Bass was driving on Interstate Highway 20 near Longview. After
obtaining Bass' consent to search his vehicle, the officer found marihuana in the trunk and
arrested him. On appeal, Bass presents one issue for review: whether the trial court erred
in overruling his motion to suppress the evidence on the basis the traffic stop was illegal. 
For the following reasons, we reverse and render a judgment of acquittal.

 We review the trial court's ruling on a motion to suppress by an abuse of discretion
standard. Oles v. State, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999). In a suppression
hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses
and the weight to be given their testimonies. We view the evidence in the light most
favorable to the trial court's ruling, State v. Ballard, 987 S.W.2d 889, 891 (Tex. Crim. App. 
1999), and afford almost total deference to the trial court's determination of historical facts
which the record supports, especially when the fact findings are based on an evaluation
of the witnesses' credibility and demeanor. State v. Ross, 32 S.W.3d 853, 856 (Tex. Crim.
App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We review
de novo the court's application of the law of search and seizure to those facts. Ross, 32
S.W.3d at 856. Because no findings of fact or conclusions of law were filed, we will
assume the trial court made implicit findings of fact that support its ruling as long as those
findings are supported by the record. If the judge's decision is correct on any theory of law
applicable to the case, the decision will be sustained. Id. at 855-56. 

 The officer stopped Bass without a warrant, and therefore the State bore the burden
at the suppression hearing of demonstrating that the stop was reasonable within the totality
of the circumstances. See Hulit v. State, 982 S.W.2d 431, 436 (Tex. Crim. App. 1998);
Russell v. State, 717 S.W.2d 7, 10 (Tex. Crim. App. 1986). To briefly stop and detain an
individual for investigative purposes, an officer need only possess reasonable suspicion,
supported by articulable facts, that criminal activity may be afoot. Terry v. Ohio, 392 U.S.
1, 29, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889, 911 (1968). The officer stopped Bass for what
he believed was a traffic violation. To justify a traffic stop, the officer must have observed
specific objective, articulable facts which, in light of the officer's experience and personal
knowledge, together with inferences from those facts, would warrant a reasonable person
to believe a traffic violation had occurred. See Davis v. State, 947 S.W.2d 240, 242-43
(Tex. Crim. App. 1997); Valencia v. State, 820 S.W.2d 397, 399 (Tex. App.-Houston [14th
Dist.] 1991, pet. ref'd).

 Bass' argument on appeal is that, even accepting all of the officer's testimony as
true, the facts presented do not prove the reasonableness of the stop. Bass contends the
sole issue in this case is whether the officer articulated specific facts available to him at the
time of the incident to give rise to a reasonable suspicion that Bass had committed a traffic
offense, i.e., a violation of Section 545.060(a) of the Texas Transportation Code pertaining
to driving within a single lane. (1) The State contends there were two bases for the stop. 
One was Bass' failure to drive within a single lane. Another was to determine whether
Bass was intoxicated or fatigued. Although the State on appeal fails to present substantive
argument on the latter basis, we will address both bases. 

 The officer's testimony about his observations of Bass' driving was as follows:

 Q [by Prosecutor] Do you remember coming in contact with
someone you later knew as Donald Ray Bass?


 A Yes, sir.


 Q How did that contact come about?


 A I was eastbound on I-20, headed into 31. It was getting close
to shift change when I noticed a vehicle in front of me was swerving within
its lane.


 Q Okay. Once you had noticed him swerving, did he ever go
outside his marked lanes?


 A Yes, sir, he did.


 Q And do you remember how many times?


 A No, sir, I do not.

 

 Q Okay. Were there other vehicles around you at that time?


 A Yes, sir. There was traffic on I-20. 


 Q Okay. Once you saw this person failing to maintain a single
lane, what did you do next?


 A I stopped the vehicle.


 Q All right. Do you remember where you stopped it? 


 A It was just west of the 31 exit that runs between Longview and
Kilgore.


 . . . .


 Q . . . And what took place at the back of the vehicle?

 

 A I began talking to the individual, just, you know, trying to find
out if he was tired, or intoxicated, or what might be causing him to swerve
within his lanes.


 . . . .


 Q . . . How long did you follow him?


 A I had been following the subject from [Highway] 135. New 135
to that area there is approximately two and a half miles -- three miles.


 Q All right. And that's when you saw him failing to maintain a
single lane?


 A Yes, sir.


 Q And do you know -- were y'all being passed by vehicles, or was
he speeding, were y'all passing vehicles, or do you know?


 A We were not speeding, and I can't recall whether we were
being passed by vehicles or not.


 Q But you know that there were other vehicles around on the
highway?


 A Oh, yes, sir. Yes, sir.


 . . . .

 

 Q [by Defense Counsel] Was the basis for your stop [sic] the
Defendant in this case -- his failure to maintain a single lane?


 A Yes, sir.


 . . . .


 Q Officer, did you observe any car trying to pass my client at the
time that he attempted or actually changed lanes?


 A In the distance that we traveled, yes, sir. There were several
vehicles that passed us.


 Q All right. Did you observe any incident that came close to
causing an accident or was unsafe in any manner in that regard?


 A No, sir, I guess not.


 We first discuss the issue of whether this testimony reveals specific, articulable facts
sufficient to give rise to a reasonable suspicion that Bass was intoxicated. The officer
testified Bass was swerving within his lane. He followed Bass for two and one-half to three
miles. On appeal, the State seems to assume by inference that, because the officer
followed Bass for about three miles, he observed Bass swerving for that distance. The
officer said Bass was not speeding. 

 Police officers may justifiably make inferences from visual observations based on
their experiences in law enforcement. Here, however, the officer did not testify that, based
on his experience, he subjectively suspected Bass of being intoxicated. Nor did he testify
that anything about the objective circumstances-time, location, the vehicle's movement,
etc.-would have led a reasonable officer to suspect Bass was intoxicated, except Bass'
swerving. From the testimony, we conclude the State failed to carry its burden to show
articulable facts that demonstrate the reasonableness of the stop on the basis of a
suspicion that Bass was intoxicated.

 The second potential basis for the traffic stop was the officer's observance of what
he believed was a traffic violation. It is well settled that a peace officer is empowered to
stop motorists when that officer reasonably believes he or she has observed a traffic
violation. Valencia, 820 S.W.2d at 399. Specifically, the State alleges the officer
reasonably believed Bass violated Section 545.060(a) of the Transportation Code. This
statute provides that an operator on a roadway divided into two or more clearly marked
lanes for traffic (1) shall drive as nearly as practical entirely within a single lane; and (2)
may not move from the lane unless that movement can be made safely. Tex. Transp.
Code Ann. § 545.060(a) (Vernon 1999). In other words, a violation of Section 545.060(a)
occurs only when a vehicle fails to stay within its lane and that movement is not safe or is
not made safely. State v. Cerny, 28 S.W.3d 796, 800 (Tex. App.-Corpus Christi 2000, no
pet.); Hernandez v. State, 983 S.W.2d 867, 871 (Tex. App.-Austin 1998, pet. ref'd); see
also Aviles v. State, 23 S.W.3d 74, 77 (Tex. App.-Houston [14th Dist.] 2000, pet. ref'd).

 The issue before us is whether the officer had a reasonable suspicion, based on
articulable facts, that Bass failed to keep his vehicle within its lane and did so in an unsafe
manner. We find the State failed to meet its burden because it failed to show articulable
facts to demonstrate the reasonableness of the stop on the basis of a suspicion Bass
violated Tex. Transp. Code Ann. § 545.060(a).

 There is no testimony from the officer that Bass' lane change occurred in an unsafe
manner. The officer did not articulate facts sufficient to support a reasonable suspicion to
detain Bass. See Cerny, 28 S.W.3d at 801. When asked, "Did you observe any incident
that came close to causing an accident or was unsafe in any manner in that regard," the
officer answered, "No, sir, I guess not." (Emphasis added.) The officer testified he saw
no unsafe behavior. Though the officer testified that in the distance they traveled several
vehicles passed them, he never testified that when the lane change occurred there were
cars passing Bass or that Bass' lane change was unsafe.

 Bass properly relies on Hernandez, 983 S.W.2d 867, and similar cases. In
Hernandez, as in this case, the defendant made only one movement out of his lane, and
the officer testified there was nothing about that particular movement that was unsafe or
improper. In this case, we have no testimony Bass crossed out of his lane more than once
or that when he did so it was in an unsafe manner. The relevant testimony on this point
was as follows: 

 Q Okay. Once you had noticed him swerving, did he ever go
outside his marked lanes?


 A Yes, sir, he did.


 Q And do you remember how many times?


 A No, sir, I do not.


The testimony indicates that, once the officer saw Bass failing to maintain a single lane he
pulled him over. There is no indication regarding the number of times Bass actually left his
lane of traffic. There is nothing in the record to indicate this lane change was any less safe
than any other lane change made on highly traveled highways. 

 Other cases on which Bass relies involve momentary "drifting" of a car over the line
when there were no other circumstances showing such a momentary movement was
unsafe. In Ehrhart, the court of appeals reversed the trial court's denial of a motion to
suppress. Ehrhart v. State, 9 S.W.3d 929, 931 (Tex. App.-Beaumont 2000, no pet.). The
court found there was no testimony from the officers that Ehrhart's "weaving" was unsafe
or dangerous. Id. at 930. "As the record contains no evidence the movement was unsafe
or dangerous, an actual traffic violation did not occur." Id.; see also Hernandez, 983
S.W.2d at 870; Atkinson v. State, 848 S.W.2d 813, 815 (Tex. App.-Houston [14th Dist.]
1993, no pet.). Because there is no evidence in this case the lane change was unsafe,
there was no actual traffic violation and no reasonable suspicion, based on articulable
facts, Bass failed to keep his vehicle in its lane and did so in an unsafe manner.

 We find the trial court abused its discretion in overruling Bass' motion to suppress. 
For all of the reasons stated, we reverse and render a judgment of acquittal.


 Donald R. Ross

 Justice



DISSENTING OPINION



 To briefly stop and detain an individual for investigative purposes, an officer need
only have reasonable suspicion supported by articulable facts that criminal activity may be
afoot. Terry v. Ohio, 392 U.S. 1, 29, 88 S.Ct. 1868, 20 L.Ed.2d 889, 1884 (1968). The
deputy stopped Bass for what he reasonably believed was a traffic violation. To justify a
traffic stop, the officer must have observed specific objective, articulable facts which, in
light of the officer's experience and personal knowledge, and together with inferences from
those facts, would warrant a reasonable person to believe that a traffic violation had
occurred. Valencia v. State, 820 S.W.2d 397, 399 (Tex. App.-Houston [14th Dist.] 1991,
pet. ref'd).

 Bass' argument on appeal is that, even accepting all of the deputy's testimony as
true, the facts presented do not prove the reasonableness of the stop. Bass contends the
sole issue in this case is whether the deputy articulated specific facts available to him at
the time of the incident to give rise to a reasonable suspicion that Bass had committed a
traffic offense, i.e., a violation of Section 545.060(a) of the Texas Transportation Code
pertaining to driving within a single lane. (2) The State contends there were two bases for the
stop. One was Bass' failure to drive within a single lane. Another was to determine
whether Bass was intoxicated or fatigued. 

 The deputy's testimony about his observations of Bass' driving was as follows:

 Q [by Prosecutor] Do you remember coming in contact with
someone you later knew as Donald Ray Bass?


 A Yes, sir.


 Q How did that contact come about?


 A I was eastbound on I-20, headed into 31. It was getting close
to shift change when I noticed a vehicle in front of me was swerving within
its lane.


 Q Okay. Once you had noticed him swerving, did he ever go
outside his marked lanes?


 A Yes, sir, he did.


 Q And do you remember how many times?


 A No, sir, I do not.

 

 Q Okay. Were there other vehicles around you at that time?


 A Yes, sir. There was traffic on I-20. 


 Q Okay. Once you saw this person failing to maintain a single
lane, what did you do next?


 A I stopped the vehicle.


 Q All right. Do you remember where you stopped it? 


 A It was just west of the 31 exit that runs between Longview and
Kilgore.


 . . . .


 Q . . . And what took place at the back of the vehicle?

 

 A I began talking to the individual, just, you know, trying to find
out if he was tired, or intoxicated, or what might be causing him to swerve
within his lanes.


 . . . .


 Q . . . How long did you follow him?


 A I had been following the subject from [Highway] 135. New 135
to that area there is approximately two and a half miles -- three miles.


 Q All right. And that's when you saw him failing to maintain a
single lane?


 A Yes, sir.


 Q And do you know -- were y'all being passed by vehicles, or was
he speeding, were y'all passing vehicles, or do you know?


 A We were not speeding, and I can't recall whether we were
being passed by vehicles or not.


 Q But you know that there were other vehicles around on the
highway?


 A Oh, yes, sir. Yes, sir.


 . . . .

 

 Q [by Defense Counsel] Was the basis for your stop [sic] the
Defendant in this case -- his failure to maintain a single lane?


 A Yes, sir.


 . . . .


 Q Officer, did you observe any car trying to pass my client at the
time that he attempted or actually changed lanes?


 A In the distance that we traveled, yes, sir. There were several
vehicles that passed us.


 Q All right. Did you observe any incident that came close to
causing an accident or was unsafe in any manner in that regard?


 A No, sir, I guess not.


 I conclude that the evidence shows the officer had a reasonable belief, supported
by articulable, objective facts, that Bass committed a traffic violation. It is well settled that
a peace officer is empowered to stop motorists when he reasonably believes he has
observed a traffic violation. Valencia v. State, 820 S.W.2d at 399. Specifically, the State
alleges that the deputy reasonably believed Bass violated Section 545.060(a) of the
Transportation Code. This statute provides that an operator on a roadway divided into two
or more clearly marked lanes for traffic (1) shall drive as nearly as practical entirely within
a single lane; and (2) may not move from the lane unless that movement can be made
safely. Tex. Transp. Code Ann. § 545.060(a) (Vernon 1999). In other words, a violation
of Section 545.060(a) occurs only when a vehicle fails to stay within its lane when such
movement cannot be made safely. Hernandez v. State, 983 S.W.2d 867, 871 (Tex.
App.-Austin 1998, pet. ref'd); see also State v. Cerny, 28 S.W.3d 796, 800 (Tex.
App.-Corpus Christi 2000, no pet.); Aviles v. State, 23 S.W.3d 74, 77 (Tex. App.-Houston
[14th Dist.] 2000, pet. ref'd). 

 The issue before us is whether the officer had a reasonable suspicion, based on
articulable facts, that Bass failed to keep his vehicle within its lane when it was unsafe to
do so. The time of the incident given on the offense report was 11:45 p.m. In addition to
the testimony described above, the officer testified there were other vehicles around them
and that several vehicles had passed them. It is true that the officer did not testify in so
many words that Bass moved out of his lane of traffic when it was unsafe to do so. 
However, he did testify that Bass was swerving, that cars had passed them both, and that
there was traffic around them. I conclude that a reasonable officer observing a driver
"swerving" between lanes on a heavily traveled interstate highway late at night when cars
are passing the vehicle and traffic is around him, may reasonably believe that the driver
is failing to maintain a single lane when it is unsafe to do so.

 The officer did testify on cross-examination that he did not see any incident that
came close to causing an accident or that was unsafe in any manner. However, that
testimony may be reasonably construed to mean that the officer did not see a near
accident or incident. It is not necessary to actually see an accident or even to see a near
accident to know that a driver is driving in an unsafe manner. Nor is it necessary for the
officer to use the magic words "unsafe manner" so long as the articulable facts he
observes justify a reasonable belief that the driver is moving out of the lane when it is
unsafe to do so. Moreover, the trial court was authorized to resolve any possible
inconsistencies in the officer's testimony.

 Bass relies on Hernandez v. State, 983 S.W.2d 867 (Tex. App.-Austin 1998, pet.
ref'd), and similar cases. These cases are distinguishable from our case. For example,
in Hernandez, the defendant made only one movement out of his lane, and the officer
testified there was nothing about that particular movement that was unsafe or improper. 
Other cases on which Bass relies involve the momentary "drifting" of a car over the line
when there were no other circumstances showing that such a momentary movement was
unsafe. Other cases on which Bass relies, such as State v. Cerny, 28 S.W.3d 796 (Tex.
App.-Corpus Christi 2000, no pet.); State v. Arriaga, 5 S.W.3d 804 (Tex.
App.-San Antonio 1999, pet. ref'd); and State v. Tarvin, 972 S.W.2d 910 (Tex. App.-Waco
1998, pet. ref'd), are driving while intoxicated cases.

 We must remember that it is not necessary for the State to prove there was an
actual violation of the law. It is only necessary that the officer have specific, objective facts
he observes that lead him to reasonably believe a traffic violation has occurred or is
occurring. Drago v. State, 553 S.W.2d 375 (Tex. Crim. App. 1977); Powell v. State, 5
S.W.3d 369, 377 (Tex. App.-Texarkana 1999, pet. ref'd); Edgar v. Plummer, 845 S.W.2d
452 (Tex. App.-Texarkana 1993, no pet.); Valencia v. State, 820 S.W.2d 397.

 I conclude that the trial court properly overruled Bass' motion to suppress. 
Therefore, I would affirm the judgment.


 William J. Cornelius

 Chief Justice


Date Submitted: October 24, 2001

Date Decided: November 30, 2001


Publish

1. Tex. Transp. Code Ann. § 545.060(a) (Vernon 1999) provides:


 (a) An operator on a roadway divided into two or more clearly
marked lanes for traffic:


 (1) shall drive as nearly as practical entirely within a single
lane; and 


 (2) may not move from the lane unless that movement can
be made safely.
2. Tex. Transp. Code Ann. § 545.060(a) (Vernon 1999) provides:


 (a) An operator on a roadway divided into two or more clearly
marked lanes for traffic:


 (1) shall drive as nearly as practical entirely within a single
lane; and 


 (2) may not move from the lane unless that movement can
be made safely.