NO. 07-01-0197-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

SEPTEMBER 20, 2002
_____

THE STATE OF TEXAS,

Appellant

v.

JAMES ROBERT GLEASON,

Appellee
_____

FROM THE 47TH DISTRICT COURT OF POTTER COUNTY;

NO. 41,827-A; HON. RICHARD DAMBOLD, PRESIDING
_____

Before QUINN and JOHNSON, J.J., and BOYD, S.J.[1]

The State of Texas appeals from an order granting the motion of James Robert Gleason (Gleason) to suppress evidence. The evidence sought to be suppressed was obtained as a result of a traffic stop by a police officer. Through two points of error, the State alleges that the trial court erred because it 1) "failed to consider all the evidence presented" at the suppression hearing and 2) misapplied the law to the facts. We affirm.

_____

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2002).

## Background

The only evidence offered at the suppression hearing consisted of testimony by Officer Mike Martinez, *i.e.* the officer who stopped Gleason. According to the officer, Gleason's car had been "weaving from side to side inside the lane" as it drove down a four lane road. The vehicle was then seen crossing over the yellow center-stripe which lay to Gleason's left and divided his lane from oncoming traffic. Gleason supposedly "corrected his action and when he did so he crossed the white dotted line that separated" his lane from the one to his right. Thereafter, Gleason allegedly traveled on for several blocks before moving into the right hand lane, stopping at an intersection apparently requiring no stop, and turning right. The officer testified that in completing the maneuver, Gleason turned wide and ventured into the "oncoming traffic lane."

Upon cross examination, however, the officer's testimony changed. No longer did he say that Gleason's car crossed the yellow stripe. Instead, he admitted that it merely "touched" the yellow line "momentarily" and then moved away from it without any "jerking" motion. As to crossing the "white dotted line" to his right, the officer conceded that Gleason did not do so until a block or more after the yellow line was momentarily touched and that he recovered in a way which Martinez termed as "nothing notable." Martinez also stated that there was no other traffic about, that he did not feel himself in danger due to Gleason's driving, and that Gleason maintained a consistent speed within the limit assigned to the road until effort was made to turn right. And, when that right turn was attempted, Gleason activated his turn indicator to signal. Whether Gleason stopped before turning then became the subject of a dispute, which dispute resulted in the officer stating that he had testified in an administrative hearing that Gleason did not stop but merely

2

slowed before turning. Finally, Martinez conceded that 1) the turn may have been wide to avoid cars parked along the curb, though he could not recall if there were any such cars present, 2) he stopped Gleason merely due to his alleged "failure to maintain a single lane," and 3) "based on everything [he] had observed . . . up to the point that [he] engaged [his] emergency equipment . . . [he] did [not] have any suspicions about . . . [Gleason] before approaching him."

Upon hearing the evidence, the trial court stated that:

It appears that the reason for the stop was failure to drive in a single lane. I cannot find a traffic violation on that based on the testimony. Apparently, if he had crossed the double stripe that would have constituted a separate violation, but it's unclear to the Court that he crossed or merely touched it. There are no inarticulable facts giving rise to a suspicion, *because the officer testified that he had no suspicions*.

(Emphasis added). The court's allusion to the want of suspicion on the part of the officer was later memorialized in its findings of fact and conclusions of law. In them, the trial court found, among other things, that Gleason had "momentarily touched the yellow line," crossed the white dotted line approximately a block to a block and a half after touching the yellow line, and returned to his lane "without any notable observation." So too did he find that no one was in the lane to Gleason's right when Gleason entered it, the extent to which Gleason entered the lane to his right was unknown, the officer did not feel endangered by Gleason's conduct, the officer stopped Gleason solely for Gleason's purported failure to maintain a single lane, and the officer had "no other suspicion about the driver at the time of the stop . . . ."

### *Standard of Review*

The standard of review applicable to issues like that at bar is well-settled. Instead of reiterating it, we cite the parties to *State v. Ross*, 32 S.W.3d 853 (Tex. Crim. App. 2000);

3

*Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App.1997); *Benitez v. State*, 5 S.W.3d 915 (Tex. App.--Amarillo 1999, pet. ref'd); and *State v. Clemmer*, 999 S.W.2d 903 (Tex. App.--Amarillo 1999, pet. ref'd) for an explanation of it.

### *Application of Standard*

*Point One - Trial Court failed to consider all of the evidence.*

As previously mentioned, the State initially contends that the trial court erred in failing to consider all of the evidence before it. The evidence which it purportedly failed to consider is that indicating Gleason turned in an illegal manner. Furthermore, the turn was allegedly illegal because he failed to make it "as closely as practicable to the right-hand curb or edge of the roadway." *See* TEX. TRANSP. CODE ANN. §545.101(a) (Vernon 1999) (stating that a right-hand turn must be made in that manner). And, had the trial court considered that evidence, it would have been obligated to find that the officer had a legitimate basis to stop Gleason, concludes the State. We overrule the point.

Needless to say, the trial court, as factfinder, was free to believe or disbelieve all or any part of the testimony imparted by the sole witness. *State v. Ross*, 32 S.W.3d at 855. This was especially so given that his testimony was not free from contradiction. Simply put, because the officer contradicted or retracted his prior testimony in various material ways while undergoing cross-examination, the trial court was free to discredit what the officer said about the turn. So, contrary to the State's supposition, it was not obligated to consider that evidence. For us to hold otherwise would be for us to implicitly overrule the holding by the Court of Criminal Appeals in *Ross*; that we cannot do.

4

Or, it may be that the trial court believed the officer when he said that 1) he stopped Gleason simply for failing to stay in one lane, 2) he did not suspect Gleason of anything else, and 3) Gleason may have turned as he did to avoid cars parked along the curb.[2] And, if the officer indicated that he did not interpret Gleason's actions as violative of other traffic regulations, the court was free to consider that assessment in resolving what actually occurred. In short, it may be that the trial court actually considered that evidence and reasonably interpreted it in a way other than that desired by the State.

*Point Two - Trial Court's failure to properly apply the law to the facts.*

In its second and last issue, the State claims that the trial court misapplied the law. That is, it believes that the trial court should have applied precedent involving stops wherein an officer saw the detainee cross the yellow line dividing opposing lanes of traffic. Instead, the court followed authority applicable to situations wherein an officer merely saw the detainee weave within a lane of traffic in a safe manner. And, because the trial court allegedly followed the wrong line of authority, it erred. We again overrule the point.

The precedent to which the State alluded is *Texas Dept. Public Safety v. Chang*, 994 S.W.2d 875 (Tex. App.–Austin 1999, no writ). There, the court held that the officer had legitimate basis to stop Chang since Chang had crossed the center line of the roadway. *Id.* at 877. Indeed, statute requires one operating a vehicle on a road having four or more lanes "and providing for two-way movement" not to drive left of the center line, except in certain situations. TEX. TRANSP. CODE ANN. 545.051(c). Yet, the trial court at bar

---

[2]The latter bit of evidence is of import given that the traffic regulation requires one to "turn as closely as practicable to the right-hand curb or edge . . . ." TEX. TRANSP. CODE ANN. 545.101(a) (Vernon 1999). The potentiality of cars being parked next to the right-hand curb could well have rendered an attempt to stay as closely to the right-hand curb as practicable rather impracticable.

found that Gleason merely touched the yellow centerline momentarily, not that he crossed it. And, to the extent that it did not find that Gleason crossed it or otherwise drove left of the center line, the holding in *Chang* is inapplicable to the circumstances before us.

Rather, our situation is akin to those in *Hernandez v. State*, 983 S.W.2d 867 (Tex. App.–Austin 1998, pet. ref'd) and *State v. Cerny*, 28 S.W.3d 796 (Tex. App.–Corpus Christi 2000, no pet.). They held that drifting from a lane constitutes a violation of traffic regulations, namely TEX. TRANSP. CODE ANN. §545.060(a), and justifies a stop when the movement is unsafe or made in an unsafe manner. *State v. Cerny*, 28 S.W.3d at 801; *Hernandez v. State*, 983 S.W.2d at 872-73. Yet, before us is no evidence of record indicating that Gleason's drift from his lane was unsafe or made in an unsafe manner. Again, there were no other cars around save for the officer's, and, the officer did not feel himself endangered. Moreover, Gleason corrected the drift in a way which did not arouse concern in the officer. Thus, the circumstances before the trial court fell within the ambit of *Hernandez* and *Cerny*. So, it had legal and factual basis upon which to hold that the traffic stop conducted by the officer was improper.

Accordingly, we affirm the order granting the motion to suppress. Pursuant to Rule 2 of the Rules of Appellate Procedure and in order to expedite the decision, we suspend the operation of Rule 39.9 of the Rules of Appellate Procedure to permit submission of the case prior to the expiration of the 21-day notice provided for in that rule.

Brian Quinn
Justice

Do not publish.

6