NUMBERS 13-06-678-CR


COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


THE STATE OF TEXAS, Appellant,

 

v.


JUAN MANUEL OBREGON, ARTURO

BARRIOS, ERNESTO VILLARREAL, JR.,

AND OSCAR LEE ROJAS, Appellees.

 
 

On appeal from the County Court at Law No. 2 

of Cameron County, Texas

 


MEMORANDUM OPINION


Before Justices Yañez, Rodriguez, and Garza 


Memorandum Opinion by Justice Garza


 Appellees, Juan Manuel Obregon, Arturo Barrios, Ernesto Villarreal, Jr., and Oscar
Lee Rojas, were charged with unlawfully carrying weapons. See Tex. Penal Code Ann. §
46.02 (Vernon 2003). They filed a motion to suppress evidence of any and all illegal
contraband and evidence of any weapons found during the search. Appellees claimed the
evidence was seized as a result of an illegal detention and that the search and seizure was
made without probable cause. The trial court found that the stop was unlawful and that no
probable cause existed for the stop and granted appellees' motion to suppress. (1)
 By one
issue, the State appeals the trial court's order granting appellees' motion to suppress. We
affirm.

I. Factual and Procedural Background

 During the early morning hours of February 20, 2006, Officer Culver of the
Brownsville Police Department noticed a Chevy Tahoe make a left turn and "cut the corner
a little too short; kind of veering off into the other lane." Culver believed that a traffic
violation had occurred, but nonetheless decided to follow the Tahoe for two miles before
actually initiating a traffic stop. 

 Upon initiating the stop, Culver approached the Tahoe from the passenger side and
asked the driver for his license and proof of insurance. Four individuals were in the vehicle: 
one in the driver's seat, one in the front passenger's seat, and two in the back seat. Culver
asked the individuals in the back seat to roll down their windows and place their hands on
the head rests of the front seats. The individuals in the back seat complied. Culver smelled
alcohol inside the vehicle and noticed a cardboard case of beer and two open beer cans in
the rear cup holders. 

 Culver asked the driver, who he identified as Arturo Barrios, to exit the vehicle. 
Culver testified that he then began to question Barrios with basic questions like, "[w]here
[are] you going; where [are] you coming from; have you been drinking; is this your vehicle." 
Barrios responded that he was not drinking and that the vehicle belonged to the front
passenger, Oscar Lee Rojas. Culver did not tell Barrios why he made the traffic stop. 
Culver did not testify that he believed Barrios had been drinking. There is nothing in the
record to indicate that any type of sobriety test was given to Barrios.

 Backup arrived for Culver about five minutes after he initiated the stop. Culver then
directed Barrios to sit on the curb with the backup officer. Barrios complied. He then spoke
to the front passenger of the vehicle, Oscar Lee Rojas, and asked him to exit the vehicle. 
Rojas complied. Culver testified that he then noticed an empty clear plastic bag on the
floor. He testified that he had knowledge and experience that plastic bags were commonly
used to carry illegal drugs. Culver left the bag on the front floorboard and began to question
Rojas outside of the vehicle. Culver testified that Rojas became "belligerent" and acted like
a "smart aleck," asking questions like, "why'd you do this and why'd you do that?" Culver
also noted that Rojas was intoxicated, smelled like alcohol, and that his eyes were "wide
open," which was a possible sign that Rojas was high on cocaine or crack. 

 Culver continued his investigation by returning to the Tahoe, placing his left knee on
the front passenger seat, and leaning over to speak to the passengers in the backseat. 
While talking to the rear passengers, Culver noticed a loaded clip to a gun between the front
right passenger seat and the center console. He then drew his weapon and advised the
backup officer of the possibility of a weapon being inside the vehicle. Culver conducted a
warrantless search of the Tahoe and found a firearm under the rear passenger seat. All
four individuals who had been in the Tahoe when the traffic stop was initiated were
handcuffed and placed under arrest. A pat down search was then conducted on all
individuals and cocaine was found on Rojas, the front passenger. Because none of the four
individuals claimed ownership of the firearm, they were all charged with unlawfully carrying
a firearm. See Tex. Penal Code Ann. § 46.02.

 Appellees filed a pretrial motion to suppress evidence, including the firearm found
in the Tahoe. On November 2, 2006, the trial court held a hearing on the motion and orally
granted the motion to suppress. This appeal ensued. 

II. Motion to Suppress

 By its sole issue, the State contends that Culver had probable cause to make the
traffic stop. The State asserts that Culver's testimony establishes that a traffic violation
occurred when the driver of the Tahoe "cut the corner a little too short; kind of veering off
into the other lane." 

A. Standard of Review

 We review a trial court's ruling on a motion to suppress for abuse of discretion by:
(1) viewing the record in the light most favorable to the ruling; (2) affording almost total
deference to the trial court's express or implied determination of historical facts and its
application of law-to-fact decisions that are supported by the record and turn on an
evaluation of credibility and demeanor; and (3) reviewing de novo the application of
law-to-fact decisions that do not turn on evaluation of credibility and demeanor. See Wiede
v. State, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007); State v. Dixon, 206 S.W.3d 587, 590
(Tex. Crim. App. 2006); Guzman v. State, 955 S.W.2d 85 (Tex. Crim. App. 1997) (setting
forth standard of review for appellate courts when deciding mixed questions of law and fact
such as "reasonable suspicion" and "probable cause"). A trial court's ruling on a motion to
suppress will be sustained if it is reasonably supported by the record and is correct on any
theory of law applicable to the case. Dixon, 206 S.W.3d at 590. 

B. Applicable Law

 When an officer stops a defendant without a warrant and without the defendant's
consent, the State has the burden at a suppression hearing of proving the reasonableness
of the stop. Castro v. State, No. PD-1635-06, 2007 Tex. Crim. App. LEXIS 863, at *8 (Tex.
Crim. App. June 27, 2007); State v. Cerny, 28 S.W.3d 796, 798 (Tex. App.-Corpus Christi
2000, no pet.). Reasonable suspicion exists if the officer has specific, articulable facts that,
when combined with rational inferences from those facts, would lead him to reasonably
conclude that a particular person is, has been, or soon will be engaged in criminal activity. 
Castro, 2007 Tex. Crim. App. LEXIS 863, at **8-9 (citing Garcia v. State, 43 S.W.3d 527,
530 (Tex. Crim. App. 2001)). If the circumstances giving rise to the reasonable suspicion
are not supported by specific articulable facts, the stop is not permissible. Terry v. Ohio,
392 U.S. 1, 29 (1968); Woods v. State, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). 
Whether an officer's underlying reasonable suspicion for the stop is justifiable has been
examined in terms of the totality of the circumstances. Castro, 2007 Tex. Crim. App. LEXIS
863, at **8-9; Woods, 956 S.W.2d at 35; Dowler v. State, 44 S.W.3d 666, 669 (Tex.
App.-Austin 2001, pet. ref'd). 

 It is generally accepted that law enforcement officers may lawfully stop a motorist
who commits a traffic violation. Garcia v. State, 827 S.W.2d 937, 944 (Tex. Crim. App.
1992) (finding that a traffic violation constitutes probable cause to stop); McVickers v. State,
874 S.W.2d 662, 664 (Tex. Crim. App. 1993), superseded by statute on other grounds as
stated in Granados v. State, 85 S.W.3d 217, 227-30 (Tex. Crim. App. 2002) (holding that
if an actual violation of law is observed, such as running a red light, there is probable cause
for the traffic stop); Garcia, 827 S.W.2d at 944. 

 However, Texas courts have held that an officer who believes a defendant has
committed a traffic violation lacks reasonable suspicion to stop the defendant when the
facts related to the alleged offense do not support the elements of the offense. See Cerny,
28 S.W.3d at 800-01; Hernandez v. State, 983 S.W.2d 867, 869-72 (Tex. App.-Austin
1998, pet. ref'd); State v. Tarvin, 972 S.W.2d 910, 912 (Tex. App.-Waco 1998, pet. ref'd). 
As a result, the same courts have held that evidence derived from such a stop is properly
suppressed. See Cerny, 28 S.W.3d at 800-01; Hernandez, 983 S.W.2d at 869-72; Tarvin,
972 S.W.2d at 912.

C. Analysis

 At the suppression hearing, Culver testified that he observed the Tahoe "cut the
corner turning -- making [a] left turn . . . . [A] right turn . . . and [making] a left turn onto [sic]
a small apartment complex parking lot." Culver testified he conducted a traffic stop "[d]ue
to that left turn. He had cut the corner a little too short; kind of veering off into the other
lane. At the time there was no vehicle there . . . ." On cross-examination, Culver elaborated
that the Tahoe was in the left-turn lane, turning onto South Iowa. According to Culver, just
the front wheel of the Tahoe cut, "kind of at an angle . . . ." Culver claimed the traffic
violation consisted of the act of "[cutting] the corner turning left." However, he was unable
to identify what the exact violation was called or the specific transportation code section
prohibiting the complained-of action. 

 Culver testified that his incident report mentions that one of the reasons he stopped
the vehicle was because there had been a theft of "Chevy vehicles." However, he testified
that he ran the license plate of the Tahoe and the owner came back as Oscar Rojas and,
that he knew the Tahoe had not been reported as a stolen vehicle before conducting the
stop. Culver admitted that when he pulled the vehicle over, Rojas identified himself and
even provided his identification. Culver then agreed that there was no doubt in his mind that
the vehicle was not a stolen vehicle because Rojas was the owner of the vehicle. 

 On appeal, the State now specifically alleges that the complained-of action was a
violation of Texas Transportation Code section 545.101. See Tex. Transp. Code Ann. §
545.101 (Vernon 1999). Section 545.101 states, in relevant part:

(b) To make a left turn at an intersection, an operator shall: 


(1) approach the intersection in the extreme left-hand lane lawfully available
to a vehicle moving in the direction of the vehicle; and 


(2) after entering the intersection, turn left, leaving the intersection so as to
arrive in a lane lawfully available to traffic moving in the direction of the
vehicle on the roadway being entered. 


(c) On a street or roadway designated for two-way traffic, the operator turning
left shall, to the extent practicable, turn in the portion of the intersection to the
left of the center of the intersection.


(d) To turn left, an operator who is approaching an intersection having a
roadway designated for one-way traffic and for which signs are posted from
a roadway designated for one-way traffic and for which signs are posted shall
make the turn as closely as practicable to the left-hand curb or edge of the
roadway. 

Id. § 545.101(b)-(d). 

 Culver testified that the road on which the Tahoe was traveling was a "double yellow
line, two way. Down here there's a left turning lane, along with two lanes." The State has
not specified which subsection the driver of the Tahoe allegedly violated. However, given
Culver's testimony that the road traveled on had two lanes, we conclude subsections (b)(1)-(2) and (c) are applicable in our analysis. 

 The State argues that the driver's act of cutting the corner provided reasonable
suspicion to conduct the stop. We note that Culver never testified that he was conducting
an investigatory stop, nor did he testify to suspecting any criminal activity other than cutting
the corner. And, we emphasize that although Culver attempted to use the "stolen vehicle"
reason as justification for the stop, he admitted he knew the vehicle was not reported stolen
prior to even stopping the Tahoe. 

 Numerous unpublished cases have considered whether alleged traffic violations
under section 545.101 were sufficient to justify a stop. See Tex. Dep't of Pub. Safety v.
Rice, No. 03-05-00180-CV, 2006 Tex. App. LEXIS 1112, at **10-11 (Tex. App.-Austin
Feb.10, 2006, pet. denied) (not designated for publication) (appellant made wide right turn
and traveled "fifteen feet" in the wrong lane); Powers v. State, No. 14-03-00442-CR, 2004
Tex. App. LEXIS 2386, at *3 (Tex. App.-Houston [14th Dist.] Mar. 16, 2004, no pet.) (not
designated for publication) (officer observed the vehicle driven by appellant make a
right-hand turn into the left northbound lane, where section 545.101 required drivers making
a right-hand turn to make both the approach and the turn as closely as practicable to the
right-hand curb or edge of the roadway) (emphasis added); Willis v. State, No.
01-03-00478-CR, 2004 Tex. App. LEXIS 4170, at **4-5 (Tex. App.-Houston [1st Dist.] May
6, 2004, pet. ref'd) (not designated for publication) (appellant made an illegal left turn
because appellant (1) did not approach the traffic light in the left turn lane; (2) entered the
crosswalk to turn towards the left turn lane after stopping in the middle west-bound lane;
and (3) caused his car to sit perpendicularly across two lanes of traffic while waiting for the
left turn signal); Reaves v. State, No. 05-97-01352-CR, 1999 Tex. App. LEXIS 5782, at *4
(Tex. App.-Dallas Aug.5, 1999, no pet.) (not designated for publication) (vehicle driven by
appellant turned left from the traffic lane immediately to the right of the dedicated left turn
lane). Although we do not rely on these cases for precedential value, see Tex. R. App. P.
47.4, we find the factual circumstances underlying these decisions to be noteworthy and
consistent with our analysis herein. Specifically, the fact that in these cases the traffic stops
were justified in part pursuant to section 545.101 where the activity involved something
more than simply having the front tire "cut the corner a little too short; kind of veering off into
the other lane." 

 Here, Culver did not testify that he observed any other driving infractions. The
evidence does not show that the driver of the Tahoe committed a violation of section
545.101. See Tex. Transp. Code Ann. § 545.101(b)-(c). Moreover, Culver never argued
that the driver did not "arrive in a lane lawfully available" to the driver of the Tahoe or that
he did not, "to the extent practicable," turn in the portion of the intersection to the left of the
center of the intersection. Id. 

 We recognize that proof of the actual commission of an offense is not necessary for
an officer to initiate a traffic stop. Praska v. State, 557 S.W.2d 83, 87 (Tex. Crim. App.
1977). However, giving appropriate deference to the trial court's findings and
determinations of credibility and demeanor of the witnesses, and after examining the stop
in light of the totality of the circumstances, and in light of the fact that Culver never treated
the offense like a traffic violation, we conclude that the evidence does not support a finding
that Culver had articulable facts sufficient to support a reasonable suspicion that appellant
violated section 545.101 of the transportation code. See Cerny, 28 S.W.3d at 800-01;
Hernandez, 983 S.W.2d at 869-72; Tarvin, 972 S.W.2d at 912; see also Terry, 392 U.S. at
29; Woods, 956 S.W.2d at 38. 

 Finding no reasonable suspicion for a detention and further finding no evidence of
a traffic violation, we overrule the State's issue. (2)

III. CONCLUSION

 The judgment of the trial court is affirmed.


 _________________________

 DORI CONTRERAS GARZA,

 Justice


Do not publish. 

Tex. R. App. P. 47.2(b).

Memorandum Opinion delivered and 

filed this the 23rd day of August, 2007.
1. The trial court entered oral findings of fact as follows:


 Court: I found that the stop was unlawful.


 * * * *

 

 And that's based on the fact that it was about two miles down from
when the stop occurred and also when the officer approached, he
said he never once treats it like a traffic violation. From the
beginning he treated it as everything but a traffic violation.


 State: In what sense, Your Honor, that he approached the-

 Court: Well, he approached the passenger versus the driver; doesn't you
know, talk to him about cutting the corner; doesn't proceed to issue
him a ticket. Basically asks them to get out of the car-


 State: Well, Your Honor-

 Court: -lower the window and all of that versus, hey, you know, you need
to have basis for doing all of that. 

2. Given our disposition, we need not address the State's remaining contentions. See Tex. R. App. P.
47.1.