COURT
OF APPEALS

                                         SECOND
DISTRICT OF TEXAS

                                                     FORT
WORTH

 

 

                                           NO.
2-07-013-CR

 

 

STEPHEN LEE DUNKELBERG                                                  APPELLANT

 

                                                      V.

 

THE STATE OF TEXAS                                                                 STATE

 

                                                  ------------

 

         FROM
COUNTY CRIMINAL COURT NO. 9 OF TARRANT COUNTY

 

                                                  ------------

 

                                                OPINION

 

                                                  ------------

A jury convicted Appellant
Stephen Lee Dunkelberg of driving while intoxicated (DWI), and the trial court
sentenced him to six days= confinement
and a $300.00 fine.  In two points,
Appellant appeals the trial court=s denial of his motion to suppress the fruits of the stop of his
vehicle and the detention of his person. 
Because we hold that the trial court did not err, we affirm the trial
court=s judgment.  








 

Background Facts

Officer Duane Ford testified that on June 5, 2005, at approximately
1:30 a.m., he observed a vehicle being driven in the outside lane in the 6300
block of Davis in North Richland Hills, Texas. 
He testified that the vehicle was Ahaving a little bit of difficulty maintaining its lane@ and weaved within its lane, crossed the lane line, and struck several
lines back and forth.  When the driver
attempted to pull the vehicle over after Officer Ford  activated his lights, the car jumped the curb
and stopped with a tire on the curb. 
This court has carefully reviewed the videotape that Officer Ford made
of the events he described and determined that the videotape supports his
testimony.  After the stop, Appellant was
arrested for DWI.  The trial court denied
his motion to suppress, finding that

$               
about 1:46 or 1:49 in the morning of June 5,
2005, Officer Ford saw Appellant=s car weaving within its
lane;

 

$               
at one point it crossed over
the dividing line into another lane;

$               
Aand
that was his basis or his reasonable suspicion for stopping the vehicle.@

 

The trial court also found that the vehicle did not stop immediately
in response to Officer Ford=s lights but continued for four or five blocks, pulled off to the
right after signaling, and then ran up over a curb in stopping.








Standard of Review








We review a trial court=s ruling on a motion to suppress evidence under a bifurcated standard
of review.[1]  In reviewing the trial court=s decision, we do not engage in our own factual review.[2]  The trial judge is the sole trier of fact and
judge of the credibility of the witnesses and the weight to be given their
testimony.[3]  Therefore, we give almost total deference to
the trial court=s rulings on
(1) questions of historical fact, even if the trial court=s determination of those facts was not based on an evaluation of
credibility and demeanor, and (2) application‑of‑law‑to‑fact
questions that turn on an evaluation of credibility and demeanor.[4]  But when application-of-law-to-fact questions
do not turn on the credibility and demeanor of the witnesses, we review the
trial court=s rulings on
those questions de novo.[5]

Stated another way, when reviewing the trial court=s ruling on a motion to suppress, we must view the evidence in the
light most favorable to the trial court=s ruling.[6]  When the trial court makes explicit fact
findings, we determine whether the evidence, when viewed in the light most
favorable to the trial court=s ruling, supports those fact findings.[7]
We then review the trial court=s legal ruling de novo unless its explicit fact findings that are
supported by the record are also dispositive of the legal ruling.[8]  We must uphold the trial court=s ruling if it is supported by the record and correct under any theory
of law applicable to the case even if the trial court gave the wrong reason for
its ruling.[9]  








A detention, as opposed to an arrest, may be justified on less than
probable cause if a person is reasonably suspected of criminal activity based
on specific, articulable facts.[10]  An officer conducts a lawful temporary
detention when he or she has reasonable suspicion to believe that an individual
is violating the law.[11]  Reasonable suspicion exists when, based on
the totality of the circumstances, the officer has specific, articulable facts
that when combined with rational inferences from those facts, would lead him to
reasonably conclude that a particular person is, has been, or soon will be
engaged in criminal activity.[12]  This is an objective standard that disregards
any subjective intent of the officer making the stop and looks solely to
whether an objective basis for the stop exists.[13]


Stop Based on Reasonable Suspicion








In his first point, Appellant contends that the stop was not based on
probable cause or reasonable suspicion. 
In his second point, Appellant contends that the trial court erred by
denying his motion to suppress. 
Appellant argues that although the officer saw the vehicle weave within
its lane, cross the lane line, and strike several lines back and forth, there
was no evidence that Appellant failed to drive in a single marked traffic lane
when it was unsafe to do so.[14]  That is, Appellant argues that he did not
violate section 545.060 of the transportation code because there was no
evidence that his driving was unsafe.  He
further argues that because there was no evidence that he failed to drive in a
single lane when it was unsafe to do so, the officer had no reasonable
suspicion to stop Appellant=s vehicle.  Appellant relies on State
v. Cerny,[15]
State v. Tarvin,[16]
and Hernandez v. State.[17]









The Cerny court noted that the arresting officer did not
articulate any justification for stopping the defendant other than the officer=s suspicion that the defendant had violated the traffic code, and
while the traffic code required the defendant=s actions to be unsafe, the record reflected mere weaving within the
lane and no indication that this weaving was unsafe.[18]  The Hernandez court rejected the State=s contention that the officer=s observing the defendant weaving within his own lane justified an
investigatory detention because the officer did not testify that, based on his
experience, he subjectively suspected the defendant of being intoxicated.[19]  The Hernandez court additionally noted
that the officer did not testify to anything about the objective circumstances,
time, location, or the vehicle=s movement that would have led a reasonable officer to suspect the
driver of being intoxicated; rather, the officer testified only that he was
concerned about the driver=s well-being.[20]  The Tarvin court noted that, although
the officer observed Tarvin=s weaving within his own lane of traffic, the officer Anever testified that he was conducting an investigatory stop, nor did
he testify to suspecting any criminal activity other than weaving out of the
lane.@[21]

Unlike the officers in those three cases, Officer Ford testified that,
based on his training and experience, he believed that Appellant might be
driving while intoxicated given the manner in which the vehicle was operated in
conjunction with the time of night.  He
testified that he stopped the vehicle Adue to an investigative stop because, as you well know, in the NHTSA
manual, . . . [weaving] is one of the sixteen clues that could be a possible
intoxicated driver.@








As the State points out, Officer Ford, like the officers in Walker
v. State[22]
and State v. Arend,[23]
testified that he conducted an investigatory stop specifically because he
believed there was a Apossibility@ Appellant was driving while intoxicated.  Officer Ford=s dashboard video of Appellant=s driving supports the officer=s testimony that Appellant was weaving from one set of reflectors on
the road to the other and that he crossed the lane divider at least once.  The video also supports Officer Ford=s testimony that Appellant was slow to react to the officer=s emergency lights.  Officer
Ford further testified that in his experience, intoxicated drivers are
frequently encountered at that time of night and that his training showed that
weaving is one of the sixteen clues that a driver is intoxicated.

 

 

 

 

 








Viewing the evidence in the light most favorable to the trial court=s ruling, we hold that the trial court properly found that Officer
Ford had reasonable suspicion to stop Appellant and that the trial court
properly denied his motion to suppress. 
We overrule Appellant=s two points and affirm the trial court=s judgment.

 

 

LEE
ANN DAUPHINOT

JUSTICE

 

PANEL:  DAUPHINOT, J.; CAYCE, C.J.; and LIVINGSTON,
J.

 

PUBLISH

 

DELIVERED:  October 2, 2008











[1]Amador
v. State, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); Guzman
v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).





[2]Romero
v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); Best
v. State, 118 S.W.3d 857, 861 (Tex. App.CFort Worth 2003, no pet.).





[3]Wiede
v. State, 214 S.W.3d 17, 24B25
(Tex. Crim. App. 2007); State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim.
App. 2000), modified on other grounds by State v. Cullen, 195 S.W.3d 696
(Tex. Crim. App. 2006).  





[4]Amador, 221
S.W.3d at 673; Montanez v. State, 195 S.W.3d 101, 108B09
(Tex. Crim. App. 2006); Johnson v. State, 68 S.W.3d 644, 652B53
(Tex. Crim. App. 2002).





[5]Amador, 221
S.W.3d at 673; Estrada v. State, 154 S.W.3d 604, 607 (Tex. Crim. App.
2005); Johnson, 68 S.W.3d at 652B53.





[6]Wiede, 214
S.W.3d at 24; State v. Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App.
2006).





[7]Kelly, 204
S.W.3d at 818B19. 





[8]Id. at
819.





[9]State
v. Stevens, 235 S.W.3d 736, 740  (Tex. Crim. App. 2007); Armendariz v.
State, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), cert. denied, 541
U.S. 974 (2004).





[10]Terry
v. Ohio, 392 U.S. 1, 22, 88 S. Ct. 1868, 1880 (1968);  Carmouche v. State, 10 S.W.3d 323, 328
(Tex. Crim. App. 2000).





[11]Ford
v. State, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).





[12]Id. at
492B93.  





[13]Id. at
492.





[14]See Tex.
Transp. Code Ann. ' 545.060(a)
(Vernon 1999).





[15]28
S.W.3d 796 (Tex. App.CCorpus
Christi 2000, no pet.).





[16]972
S.W.2d 910 (Tex. App.CWaco
1998, pet. ref=d).





[17]983
S.W.2d 867 (Tex. App.CAustin
1998, pet. ref=d).





[18]Cerny, 28
S.W.3d at 801.





[19]Hernandez, 983
S.W.2d at 870.





[20]Id.





[21]Tarvin, 972
S.W.2d at 912.





[22]No.
02-04-00336-CR, 2006 WL 349704, at *5 (Tex. App.CFort
Worth Feb. 16, 2006, no pet.) (mem. op., not designated for publication).





[23]No.
02-03-00336-CR, 2005 WL 994710, at *5 (Tex. App.CFort
Worth April 28, 2005, pet. ref=d) (mem. op., not designated
for publication).