NO. 07-01-0197-CR 


IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



SEPTEMBER 20, 2002


______________________________



THE STATE OF TEXAS
,




 Appellant


v.



JAMES ROBERT GLEASON, 




 Appellee

_________________________________



FROM THE 47TH DISTRICT COURT OF POTTER COUNTY;



NO. 41,827-A; HON. RICHARD DAMBOLD, PRESIDING


_______________________________



Before QUINN and JOHNSON, J.J., and BOYD, S.J. (1)

 The State of Texas appeals from an order granting the motion of James Robert
Gleason (Gleason) to suppress evidence. The evidence sought to be suppressed was
obtained as a result of a traffic stop by a police officer. Through two points of error, the
State alleges that the trial court erred because it 1) "failed to consider all the evidence
presented" at the suppression hearing and 2) misapplied the law to the facts. We affirm.




Background


 The only evidence offered at the suppression hearing consisted of testimony by
Officer Mike Martinez, i.e. the officer who stopped Gleason. According to the officer,
Gleason's car had been "weaving from side to side inside the lane" as it drove down a four
lane road. The vehicle was then seen crossing over the yellow center-stripe which lay to
Gleason's left and divided his lane from oncoming traffic. Gleason supposedly "corrected
his action and when he did so he crossed the white dotted line that separated" his lane
from the one to his right. Thereafter, Gleason allegedly traveled on for several blocks
before moving into the right hand lane, stopping at an intersection apparently requiring no
stop, and turning right. The officer testified that in completing the maneuver, Gleason
turned wide and ventured into the "oncoming traffic lane."

 Upon cross examination, however, the officer's testimony changed. No longer did
he say that Gleason's car crossed the yellow stripe. Instead, he admitted that it merely
"touched" the yellow line "momentarily" and then moved away from it without any "jerking"
motion. As to crossing the "white dotted line" to his right, the officer conceded that
Gleason did not do so until a block or more after the yellow line was momentarily touched
and that he recovered in a way which Martinez termed as "nothing notable." Martinez also
stated that there was no other traffic about, that he did not feel himself in danger due to
Gleason's driving, and that Gleason maintained a consistent speed within the limit
assigned to the road until effort was made to turn right. And, when that right turn was
attempted, Gleason activated his turn indicator to signal. Whether Gleason stopped before
turning then became the subject of a dispute, which dispute resulted in the officer stating
that he had testified in an administrative hearing that Gleason did not stop but merely
slowed before turning. Finally, Martinez conceded that 1) the turn may have been wide to
avoid cars parked along the curb, though he could not recall if there were any such cars
present, 2) he stopped Gleason merely due to his alleged "failure to maintain a single
lane," and 3) "based on everything [he] had observed . . . up to the point that [he] engaged
[his] emergency equipment . . . [he] did [not] have any suspicions about . . . [Gleason]
before approaching him." 

 Upon hearing the evidence, the trial court stated that:

 It appears that the reason for the stop was failure to drive in a single lane. 
I cannot find a traffic violation on that based on the testimony. Apparently, if
he had crossed the double stripe that would have constituted a separate
violation, but it's unclear to the Court that he crossed or merely touched it. 
There are no inarticulable facts giving rise to a suspicion, because the officer
testified that he had no suspicions. 


(Emphasis added). The court's allusion to the want of suspicion on the part of the officer
was later memorialized in its findings of fact and conclusions of law. In them, the trial court
found, among other things, that Gleason had "momentarily touched the yellow line,"
crossed the white dotted line approximately a block to a block and a half after touching the
yellow line, and returned to his lane "without any notable observation." So too did he find
that no one was in the lane to Gleason's right when Gleason entered it, the extent to which
Gleason entered the lane to his right was unknown, the officer did not feel endangered by
Gleason's conduct, the officer stopped Gleason solely for Gleason's purported failure to
maintain a single lane, and the officer had "no other suspicion about the driver at the time
of the stop . . . ." 

Standard of Review


 The standard of review applicable to issues like that at bar is well-settled. Instead
of reiterating it, we cite the parties to State v. Ross, 32 S.W.3d 853 (Tex. Crim. App. 2000);
Guzman v. State, 955 S.W.2d 85 (Tex. Crim. App.1997); Benitez v. State, 5 S.W.3d 915
(Tex. App.--Amarillo 1999, pet. ref'd); and State v. Clemmer, 999 S.W.2d 903 (Tex.
App.--Amarillo 1999, pet. ref'd) for an explanation of it. 

 Application of Standard


 Point One - Trial Court failed to consider all of the evidence.

 As previously mentioned, the State initially contends that the trial court erred in
failing to consider all of the evidence before it. The evidence which it purportedly failed to
consider is that indicating Gleason turned in an illegal manner. Furthermore, the turn was
allegedly illegal because he failed to make it "as closely as practicable to the right-hand
curb or edge of the roadway." See Tex. Transp. Code Ann. §545.101(a) (Vernon 1999)
(stating that a right-hand turn must be made in that manner). And, had the trial court
considered that evidence, it would have been obligated to find that the officer had a
legitimate basis to stop Gleason, concludes the State. We overrule the point. 

 Needless to say, the trial court, as factfinder, was free to believe or disbelieve all or
any part of the testimony imparted by the sole witness. State v. Ross, 32 S.W.3d at 855. 
This was especially so given that his testimony was not free from contradiction. Simply
put, because the officer contradicted or retracted his prior testimony in various material
ways while undergoing cross-examination, the trial court was free to discredit what the
officer said about the turn. So, contrary to the State's supposition, it was not obligated to
consider that evidence. For us to hold otherwise would be for us to implicitly overrule the
holding by the Court of Criminal Appeals in Ross; that we cannot do. 

 Or, it may be that the trial court believed the officer when he said that 1) he stopped
Gleason simply for failing to stay in one lane, 2) he did not suspect Gleason of anything
else, and 3) Gleason may have turned as he did to avoid cars parked along the curb. (2) 
And, if the officer indicated that he did not interpret Gleason's actions as violative of other
traffic regulations, the court was free to consider that assessment in resolving what actually
occurred. In short, it may be that the trial court actually considered that evidence and
reasonably interpreted it in a way other than that desired by the State. 

 Point Two - Trial Court's failure to properly apply the law to the facts.

 In its second and last issue, the State claims that the trial court misapplied the law. 
That is, it believes that the trial court should have applied precedent involving stops
wherein an officer saw the detainee cross the yellow line dividing opposing lanes of traffic. 
Instead, the court followed authority applicable to situations wherein an officer merely saw
the detainee weave within a lane of traffic in a safe manner. And, because the trial court
allegedly followed the wrong line of authority, it erred. We again overrule the point.

 The precedent to which the State alluded is Texas Dept. Public Safety v. Chang,
994 S.W.2d 875 (Tex. App.-Austin 1999, no writ). There, the court held that the officer
had legitimate basis to stop Chang since Chang had crossed the center line of the
roadway. Id. at 877. Indeed, statute requires one operating a vehicle on a road having
four or more lanes "and providing for two-way movement" not to drive left of the center line,
except in certain situations. Tex. Transp. Code Ann. 545.051(c). Yet, the trial court at bar
found that Gleason merely touched the yellow centerline momentarily, not that he crossed
it. And, to the extent that it did not find that Gleason crossed it or otherwise drove left of
the center line, the holding in Chang is inapplicable to the circumstances before us.

 Rather, our situation is akin to those in Hernandez v. State, 983 S.W.2d 867 (Tex.
App.-Austin 1998, pet. ref'd) and State v. Cerny, 28 S.W.3d 796 (Tex. App.-Corpus Christi
2000, no pet.). They held that drifting from a lane constitutes a violation of traffic
regulations, namely Tex. Transp. Code Ann. §545.060(a), and justifies a stop when the
movement is unsafe or made in an unsafe manner. State v. Cerny, 28 S.W.3d at 801;
Hernandez v. State, 983 S.W.2d at 872-73. Yet, before us is no evidence of record
indicating that Gleason's drift from his lane was unsafe or made in an unsafe manner. 
Again, there were no other cars around save for the officer's, and, the officer did not feel
himself endangered. Moreover, Gleason corrected the drift in a way which did not arouse
concern in the officer. Thus, the circumstances before the trial court fell within the ambit
of Hernandez and Cerny. So, it had legal and factual basis upon which to hold that the
traffic stop conducted by the officer was improper.

 Accordingly, we affirm the order granting the motion to suppress. Pursuant to Rule
2 of the Rules of Appellate Procedure and in order to expedite the decision, we suspend
the operation of Rule 39.9 of the Rules of Appellate Procedure to permit submission of the
case prior to the expiration of the 21-day notice provided for in that rule.

 

 Brian Quinn

 Justice

Do not publish.
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't 

Code Ann. §75.002(a)(1) (Vernon Supp. 2002). 
2. The latter bit of evidence is of import given that the traffic regulation requires one to "turn as closely
as practicable to the right-hand curb or edge . . . ." Tex. Transp. Code Ann. 545.101(a) (Vernon 1999). The
potentiality of cars being parked next to the right-hand curb could well have rendered an attempt to stay as
closely to the right-hand curb as practicable rather impracticable.



 had received a plea
offer and was contemplating whether to accept it and plead guilty. So too did the trial court
state that it would "prefer" that the defendant plead guilty. Though appellant objected to
neither comment at trial, he complained of them on appeal. The intermediate court
concluded that because no contemporaneous objection was uttered, the error was waived. 
However, the Court of Criminal Appeals reversed the decision, holding that the error was
fundamental and outside the scope of Rule 33.1. Id. at 132. In so holding, the court did
not state that each instance of misconduct by the trial judge constituted fundamental error
nor did it overrule its prior holding in Brewer. Rather, four of those voting to reverse
deemed the comments to taint the presumption of innocence while the fifth and sixth judges
believed that they denied the accused his right to an impartial judge or an impartial tribunal,
respectively. Saldano v. State, 70 S.W.3d 873, 889 n.72 (Tex. Crim. App. 2002). While the scope of Blue is far from certain, a statement to the jury panel that the
mere fact of an indictment means there is a 20-30% chance the defendant is guilty would
appear to fall within its parameters in tainting the presumption of innocence. We therefore
find that it was not necessary for appellant to complain at trial to preserve error on appeal. 
Further, because the comment tainted the presumption of innocence, the error was of
constitutional dimension. See Blue v. State, 41 S.W.3d at 132. 

 The only error categorically immune from harm analysis is federal constitutional error
labeled as "structural" by the United States Supreme Court. High v. State, 964 S.W.2d
637, 638 (Tex. Crim. App. 1998); Cain v. State, 947 S.W.2d 262, 264 (Tex. Crim. App.
1997); Chavez v. State, 34 S.W.3d 692, 696-97 (Tex. App.--Amarillo 2000), rev'd on other
grounds, 91 S.W.3d 797 (Tex. Crim. App. 2002). A structural error affects the framework
in which the trial proceeds rather than an error in the trial process itself. Arizona v.
Fulminante, 499 U.S. 279, 310, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991). Structural
errors include total deprivation of the right to counsel, an impartial judge, unlawful exclusion
from a grand jury of members of the defendant's race, the right to self-representation, and
the right to a public trial. Chavez v. State, 34 S.W.3d at 697. A violation of the
presumption of innocence has generally been analyzed for harm. See Scott v. State, 80
S.W.3d 306, 309 (Tex. App.--Fort Worth 2002, no pet.); Mendoza v. State, 1 S.W.3d 829,
830-31 (Tex. App.--Corpus Christi 1999, pet. ref'd).

 Although the presumption of innocence is a constitutional right, appellant only
challenges the violation of state statutes providing for the presumption. We conduct a
harmless error analysis of constitutional error by reversing unless we determine beyond a
reasonable doubt that the error did not contribute to the conviction while we review all other
error to determine if a substantial right has been affected. Tex. R. App. P. 44.2(a) and (b). 
However, we find the error harmless under either analysis in this particular case.

 Immediately after making the contested comment, the trial court informed the venire
panel it should not give consideration to the fact there was a grand jury indictment. The
charge also included an instruction to the jury that a grand jury indictment is not evidence
of guilt and could not be considered in determining guilt. Additionally, it contained an
instruction that all persons are presumed innocent, which presumption alone is sufficient
to acquit the defendant. Further, appellant gave a statement in which he confessed to the
murder. Under these circumstances, we find beyond a reasonable doubt that the error did
not contribute to the conviction. 

Issue Four - Decision to Testify


 Appellant contends in his fourth issue that the trial court improperly advised him
against testifying at trial thereby depriving him of due process and equal protection. We
overrule the issue.

 After appellant's counsel informed the court that he wished to testify against her
advice, the court held the following discussion with appellant:

 THE COURT: I strongly advise you not to testify in this case.

 

 THE DEFENDANT: Uh-huh.


 THE COURT: For one thing, and you may already know this, I admitted your
confession into evidence and the jury has heard it.


 THE DEFENDANT: Uh-huh.


 THE COURT: I may have committed legal error in doing that. And an
appellate court, two levels of appellate courts in Texas will look at that ruling
very closely to see if I made an error in letting it into evidence. If you testify,
that takes away any error on my part. Do you understand that? 


* * *



 THE DEFENDANT: Yes, sir. Yes, sir.


 THE COURT: If I have been wrong, legally in letting that into evidence, then
if you testify no appellate court will then look at the error.


 THE DEFENDANT: Yeah.


 THE COURT: So, essentially, all of the evidence against you is the
confession. 


 THE DEFENDANT: Yeah.


 THE COURT: If the appellate courts say that it was wrong to let it in, you
become a free man.


* * *


 THE COURT: You become a free man. If you testify, they will never look at
the confession's admissibility. Do you understand that?


 THE DEFENDANT: Yes, sir.


 THE COURT: Do you still want to testify?


 THE DEFENDANT: This is my problem. May I speak?


 THE COURT: Yes.


 THE DEFENDANT: It doesn't feel right to me for this - - for this case, for me
to wait five, six years so that this case is reopened, because just as they can
- - the proof right now, the evidence that they have after some time they can
invalidate it. The testimony that I say, the true testimony that I say from my
heart can be invalidated, too. This jury could say, why didn't you speak? 
Because you were guilty. Yeah.


 THE COURT: Let me answer him on this. I'm going - - in a little while I'm
going to instruct the jury if you don't testify that they are not to consider the
fact that you did not testify. Nevertheless, it will be against the law for them
to - - to talk about you not testifying. 

 

 THE DEFENDANT: Okay.


 THE COURT: Do you understand that?


* * *


 THE DEFENDANT: Yes. 


 THE COURT: I'm going to tell them that in a little while, if you do not testify. 
And it's my opinion that they will respect that instruction from me.


 THE DEFENDANT: Okay. If you promise me that, then I'll try to find out - -
I'll try to figure out how I can clear this up.

 

 More than anything, for the deceased, for the family of the deceased.
Why this person really lost his life. Yeah. 


* * *



 THE COURT: In return for me instructing the jury that they cannot talk about
you not testifying, you're not going to testify. Is that correct?


 THE DEFENDANT: That is correct.


 THE COURT: Okay. We're going to do that.


 THE DEFENDANT: Okay. 


 [THE STATE]: Your Honor, just based on uh - - on my impression, and I
know the State really doesn't have a position in this. However, the fact that
he has changed his mind, I'm wondering if it would be prudent to take a short
recess, five or ten minutes to allow him time to consider whether this is a
voluntary decision. And like I said, I know it's not the State's position, but uh
- - I would be concerned on appeal whether this is truly his decision or not.


 THE COURT: That's not a bad idea. We have the time to do that. I think in
all fairness, we ought to do that. Let me tell him what I'm going to do. 

* * *


 THE COURT: Mr. Molina, we're going to take a break or recess for about 15
minutes here. 


 THE DEFENDANT: Okay. 

 

 THE COURT: To let you be very, very sure that that's what you want to do
now. Okay?


 THE DEFENDANT: Okay. That's fine.


 THE COURT: So you go think about this, and then we'll talk about it again 
In 15 minutes. Okay?


 THE DEFENDANT: Okay. 


* * * 



 THE COURT: Okay. Mr. Molina, have you had a chance to think it over?


 THE DEFENDANT: Yes, sir.


 THE COURT: And it's still your decision not to testify?


 THE DEFENDANT: Yes, I will not testify.

 Appellant argues that the court's reference to its ruling on the admission of his
confession was "an inappropriate inducement not to testify" by suggesting that silence is
the "best course to pursue in order to overturn the case." A defendant has the right to
testify in his own behalf and when it is made clear to the trial court that a defendant wishes
to exercise that right, the trial court errs in refusing to allow the testimony. Hebert v. State,
836 S.W.2d 252, 255 (Tex. App.--Houston [1st Dist.] 1992, pet. ref'd). While trial counsel
may offer advice on whether a defendant should testify, the ultimate decision is made by
the defendant. Id. 

 In this instance, we perceive the trial court's comments to be no more than what
appellant may well have been advised by his own counsel. Further, the record reveals that
appellant's apprehension in not testifying was his fear that the jury would hold that fact
against him. Once he was informed by the court that the jury would receive an instruction
not to hold his failure to testify against him, he stated he would relinquish that right. 
Moreover, he was given additional time to consult with his attorney and reaffirm that
decision. Nothing in the record indicates the trial court's refusal to allow appellant to testify
or that his waiver of that right was not knowing and voluntary. We find no reversible error.

Issue Five - Batson Challenge


 Appellant contends in his final issue that the trial court erred in denying his Batson (4)
challenge. (5) We overrule the issue.

 Standard 

 After the jury was chosen, appellant complained to the trial court that four of the five
prospective Hispanic jurors on the panel were struck by the State. A litigant may not
exercise his peremptory challenges in an invidiously discriminatory manner. Batson v.
Kentucky, 476 U.S. 79, 89, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69 (1986). The party
asserting that discrimination has occurred must establish a prima facie case of the same. 
Ford v. State, 1 S.W.3d 691, 693 (Tex. Crim. App. 1999). Should the movant fulfill that
duty, then the party who exercised the strikes must explain why he did so. Id. Moreover,
the reasons proffered must be facially neutral. Id. Unless discriminatory intent is inherent
in the State's explanation, the reason offered will be deemed race neutral. Purkett v. Elem,
514 U.S. 765, 768, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995); Ford v. State, 1 S.W.3d
691, 693-94 (Tex. Crim. App. 1999). Once this step has been satisfied, the movant must
persuade the court to conclude that his opponent engaged in purposeful discrimination.
Ford v. State, 1 S.W.3d at 693. Because the trial court's decision often turns on credibility,
we give great deference to the trial court's decision and will not disturb it unless it is clearly
erroneous. Herron v. State, 86 S.W.3d 621, 630 (Tex. Crim. App. 2002); Mathis v. State,
67 S.W.3d 918, 924 (Tex. Crim. App. 2002). 

 Application of the Standard

 The prosecutor gave an explanation for her strike of each Hispanic juror: 1) the first
one was struck because she was a school teacher and, from the prosecutor's experience,
school teachers tend to favor rehabilitation rather than punishment, 2) the second was a
former prosecutor and a current attorney, and the prosecutor did not want an attorney on
her panel who might use his own experience and prejudices rather than follow the court's
charge, 3) the third made a comment that everyone was capable of murder and the
prosecutor feared the juror would identify with appellant, and 4) the fourth was only
temporarily employed, causing the prosecutor to feel she was not stable in the community,
and she was fluent in Spanish. 

 Striking a juror because of his or her occupation and counsel's opinions of the views
and attitudes associated with that occupation is a facially neutral explanation. Tompkins
v. State, 774 S.W.2d 195, 205 (Tex. Crim. App. 1987), aff'd, 490 U.S. 754, 109 S.Ct. 2180,
104 L.Ed.2d 834 (1989); Brown v. State, 56 S.W.3d 915, 918 (Tex. App.--Houston [14th
Dist.] 2001, no pet.). The same is true of the lack of employment, Partida v. State, 133
S.W.3d 738, 742 (Tex. App.--Corpus Christi 2003, no pet.), instability in one's personal life,
Herron v. State, 86 S.W.3d at 631, or the possibility that the juror might identify with the
appellant. Gerber v. State, 845 S.W.2d 460, 466 (Tex. App.--Houston [1st Dist.] 1993, pet.
ref'd). 

 With respect to the second and third jurors struck, appellant did not provide any
evidence of a racially motivated strike. Because the reasons given were facially race
neutral and appellant made no attempt to rebut those reasons, we will not review those
strikes. See Simpson v. State, 119 S.W.3d 262, 268 (Tex. Crim. App. 2003), cert. denied,
___U.S.___, 124 S.Ct. 2837, 159 L.Ed.2d 270 (2004); Flores v. State, 33 S.W.3d 907, 926
(Tex. App.--Houston [14th Dist.] 2000, pet. ref'd). 

 As to the first and fourth jurors, appellant pointed out the names of two other
persons on the panel that were a teacher and a professor respectively who were not struck. 
Nevertheless, the State had already used all of its peremptory strikes prior to reaching one
of those persons, and contended that the other person had given answers that overrode
her misgivings about the person being a teacher. As to the juror that was only temporarily
employed, appellant pointed out that retired persons were not struck. However, he did not
name those persons, and we can perceive a difference in stability between an older person
who has worked many years and is currently retired and a person of working age who is
not gainfully employed. Further, appellant did not attack the strike of that same person on
the basis that she was fluent in Spanish. Therefore, we cannot say that the trial court's
ruling was clearly erroneous. 

 Accordingly, all of appellant's issues are overruled and the judgment of the trial court
is affirmed.



 John T. Boyd

 Senior Justice


Do not publish.
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code
Ann. §75.002(a)(1) (Vernon Supp. 2004). 
2. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). 
3. Appellant does not separately address his complaint that the Texas Constitution was violated, and
we will therefore not address it. Johnson v. State, 853 S.W.2d 527, 533 (Tex. Crim. App. 1992), cert. denied,
510 U.S. 852, 114 S.Ct. 154, 126 L.Ed.2d 115 (1993). 
4. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
5. At the commencement of his brief, appellant states that his fifth issue is whether the "trial court
committed fundamental error when it failed to properly make findings as to the appropriateness of the State's
reasons for it's [sic] peremptory challenges . . . ." Thus, appellant appears to be arguing that the trial court
was required to make specific affirmative findings, and its statement that "I'm going to deny the motion to
disqualify this jury on Batson . . . " is insufficient. Appellant cites no authority for this contention, and thus to
the extent appellant is raising such an issue on appeal, it is inadequately briefed. See Tex. R. App. P. 38.1(h)
(requiring an appellate brief to contain appropriate citations to authorities and to the record).