COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
CHARLES ETHREDGE WALTMON,              )                  No. 08-03-00317-CR
)
                                    Appellant,                        )                              Appeal from
)
v.                                                                          )                  County Criminal Court No. 8 
)
THE STATE OF TEXAS,                                   )                  of Dallas County, Texas
)
                                    Appellee.                          )                  (TC# MB02-31751-J)
                                                                             )

O P I N I O N

            Charles Ethredge Waltmon appeals his conviction for driving while intoxicated. Appellant
was convicted by jury and sentenced to 180 days probated for two years and a fine of $800. We
affirm.
FACTUAL SUMMARY
            Around 2 a.m. on February 2, 2002, Officers J.S. Hogg and David Rhodes from the Grand
Prairie Police Department were dispatched to eastbound I-30 in search of a suspected intoxicated
motorist. An unidentified concerned citizen had called 911 to report a maroon Ford Taurus was “all
over the road.” The caller also provided the car’s license plate number.
            Shortly after being dispatched, Officer Hogg found a car matching the physical description
and license plate number. Hogg followed the Taurus and observed it travel from the center lane,
slightly weave into the fast lane, weave back into the center lane, and finally move into the slow lane. 
Hogg watched the vehicle do this three or four times. The driver did not use his turn signal when
changing lanes. Hogg did not stop the driver at this point because his car was not equipped with an
in-car camera. Officer Rhodes’ car was.
            Officer Rhodes initially passed by the Taurus and pulled over to the shoulder. Upon being
notified of its location by Officer Hogg, Rhodes waited for the vehicle to pass him again. When the
Taurus passed, Rhodes pulled in behind it, turned on his camera to capture the car’s driving patterns,
and observed that the driver was unable to maintain a single lane. Rhodes also characterized
Appellant’s driving as weaving without the use of turn signal lights.



            Rhodes followed the Taurus for two to two and a half miles because I-30 was under
construction and there was no shoulder. After the Loop 12 exit, Rhodes activated his red and blue
lights. The driver moved into the right-hand lane after signaling, but Rhodes had to turn on his siren
before the driver would pull over. When the driver exited the vehicle, Rhodes noticed that his walk
was awkward, lethargic, and very unsteady. Once the driver came closer, Rhodes smelled the strong
odor of alcohol on Appellant’s breath. Rhodes then proceeded to perform field sobriety tests. The
video in his car was working, but the sound was not. Rhodes performed the standard three-test
battery of sobriety tests, including the horizontal gaze nystagmus test, the walk and turn test, and the
one-leg stand. Before administering the tests, Rhodes asked Appellant whether he had been
drinking. Appellant indicated he’d had two mixed drinks.


 Rhodes also asked whether Appellant
had any medical conditions which prevented him from performing the sobriety tests and whether he
had any problems with his head, back, or legs. Appellant responded no.


 
            Rhodes screened Appellant to make sure he was a candidate for the horizontal gaze
nystagmus test and determined that he was. Appellant had six clues out of six on the HGN test. 
Rhodes then administered the walk and turn test. Appellant failed to stand heel to toe during the
instruction phase and during the walking phase, he stepped off the line and missed heel to toe on
almost every step. Further, he stopped walking during the test and took an incorrect number of steps;
the test had to be aborted before he turned around for safety reasons. As a result, Rhodes noted six
out of the eight possible clues for intoxication. Finally, Rhodes administered the one-leg stand. 
During this test, Appellant could not keep his foot up for more than two seconds at a time. Rhodes
found two out of four clues on this exercise. 
            Rhodes testified that at this location, the shoulder was wide and improved and free from any
major debris. The shoulder was fairly even, and Rhodes did not note any obvious obstructions that
would have prevented Appellant from walking in a straight line.


 The weather was cold but not rainy
and Rhodes did not recall wind being a factor.
            After the tests were completed, Rhodes placed Appellant under arrest and initiated a search
of both Appellant and his vehicle. He found an aspirin bottle in Appellant’s right boot. He opened
the bottle and found it one-third full of an amber-colored liquid that smelled of alcohol.


 Inside the
car, Rhodes found two empty bottles of Crown Royal. Appellant was then taken to the Grand Prairie
station and placed in the intoxilyer room. Rhodes testified that Appellant refused to give a breath
sample. Appellant testified that he agreed to take an intoxilyer test but Rhodes did not administer
one.
MOTION TO SUPPRESS
            In Point of Error No. One, Appellant complains that the trial court should have granted his
motion to suppress because the traffic stop was illegal. In Point of Error No. Two, he alleges that
the motion should have been granted because the officer relied on an uncorroborated anonymous tip. 
Procedural Summary
            Appellant moved to suppress all tangible evidence seized on the date of his arrest, all
photographs, all statements made by Appellant, and all testimony of law enforcement officers
regarding the search. In denying the motion, the trial court commented: 
Well, it’s my understanding of the law in order to make a DWI stop the police
only have to have reasonable suspicion. They don’t have to have probable cause. 
They have to have probable cause to make the arrest. And the testimony, as I heard
it, is that they did not rely solely upon an informant but rather clearly the informant’s
phone call and description of driving notified them to that vehicle. And my
understanding is that not only were they given a vehicle description, but were also
given a license plate description. And that Officer Hogg testified that within a
quarter of a mile of receiving that dispatch, which puts it in a time frame for me --
within a quarter of a mile of receiving the dispatch he saw that vehicle and followed
the vehicle for some time.
 
Now, he described the driving as weaving, clearly not to the degree that the
caller, supposed caller or informant had. He stated that the car was weaving and
slowly drifting between the lanes. The second officer stated that he also observed
weaving, and that although the person appeared to be maintaining the lane somewhat
they would touch the line. Which I would think that if I had two squad cars
following me that I might not drive as erratically as if I did not.
 
So I do believe that the officers had a reasonable suspicion to stop the vehicle
based on the informant and their observations of the driving. And my understanding
of their testimony is that they did not develop probable cause until they did the field
sobriety tests and whatnot and they based their arrest on probable cause.

Standard of Review
            A trial court’s denial of a motion to suppress is reviewed for an abuse of discretion. Oles v.
State, 993 S.W.2d 103, 106 (Tex.Crim.App. 1999). A trial court abuses its discretion when its 
decision is so clearly wrong as to lie outside the zone of reasonable disagreement. Cantu v. State,
842 S.W.2d 667, 682 (Tex.Crim.App. 1992), cert. denied, 509 U.S. 926, 113 S.Ct. 3045, 125
L.Ed.2d 730 (1993); Montgomery v. State, 810 S.W.2d 372, 391 (Tex.Crim.App. 1990)(op. on
reh’g).
            The trial court’s findings of fact are given almost total deference, and in the absence of
explicit findings, we assume the judge made whatever appropriate implicit findings are supported
by the record. Carmouche v. State, 10 S.W.3d 323, 327-28 (Tex.Crim.App. 2000); Guzman v. State,
955 S.W.2d 85, 89-90 (Tex.Crim.App. 1997). However, we review de novo the application of the
relevant law to the facts, including Fourth Amendment search and seizure law. Carmouche, 10
S.W.3d at 327. De novo review is also proper when the facts are undisputed and we are presented
with a pure question of law. Oles, 993 S.W.2d at 106. For example, when the issue to be
determined on appeal is whether an officer had probable cause, the trial judge is not in an
appreciably better position than the reviewing court to make that determination. Guzman, 955
S.W.2d at 87. Therefore, although due weight should be given to the inferences drawn by trial
judges and law enforcement officers, determinations of matters such as reasonable suspicion and
probable cause should be reviewed de novo. Id., citing Ornelas v. United States, 517 U.S. 690, 699,
116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996).
            A judicial ruling will not be reversed on appeal, even if made for the wrong reason, if the
ruling is supported by the record and correct on any theory of law applicable to the case. Villarreal
v. State, 935 S.W.2d 134, 139 (Tex.Crim.App. 1996); Romero v. State, 800 S.W.2d 539, 543
(Tex.Crim.App. 1990); Calloway v. State, 743 S.W.2d 645, 652 (Tex.Crim.App. 1988). Similarly,
when officers give the wrong reason for why their actions were legal under the Fourth Amendment,
the case will not be reversed if the facts support a correct reason. Williams v. State, 726 S.W.2d 99,
100-01 (Tex.Crim.App. 1986); Esco v. State, 668 S.W.2d 358, 366 (Tex.Crim.App. 1982).
Traffic Violations & Anonymous Tip
            Appellant maintains that the officers lacked probable cause to stop him because the informant
tip was unreliable and because there were no traffic violations. He suggests that the trial court
implied an improper legal standard to the basis of the stop as given by the officers. In order to
discredit the tip, Appellant argues that the officers did not observe driving habits consistent with the
anonymous tip and that they failed to even notice Appellant and passed right by him. Finally,
Appellant claims that the tip failed to pass muster and cannot be used in determining the legality of
the stop.
            A police officer may stop and briefly detain a person for investigative purposes if the officer,
in light of his experience, has a reasonable suspicion supported by articulable facts that criminal
activity may be afoot. Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The
reasonableness of a temporary detention must be examined in terms of the totality of the
circumstances. Woods v. State, 956 S.W.2d 33, 38 (Tex.Crim.App. 1997). A temporary detention
is justified when the detaining officer has specific articulable facts which, taken together with
rational inferences from those facts, lead him to conclude that the person detained is, has been, or
soon will be engaged in criminal activity. Id. A reasonable suspicion means more than a mere
hunch. Davis v. State, 947 S.W.2d 240, 244 (Tex.Crim.App. 1997). A detention is not permissible
unless the circumstances objectively support a reasonable suspicion of criminal activity. Id. A law
enforcement officer may arrest an offender without a warrant for any offense committed in his
presence or within his view. Tex.Code Crim.Proc.Ann. art. 14.01(b)(Vernon 1977). An officer
may lawfully stop a motorist who commits a traffic violation. McVickers v. State, 874 S.W.2d 662,
664 (Tex.Crim.App. 1993), overruled on other grounds, Granados v. State, 85 S.W.3d 217
(Tex.Crim.App. 2002). However, in determining whether a traffic violation has been committed,
the principles of Terry apply just as they do to other crimes. Drago v. State, 553 S.W.2d 375, 377-78
(Tex.Crim.App. 1977); Powell v. State, 5 S.W.3d 369 (Tex.App.--Texarkana 1999, pet. ref’d), cert.
denied, 529 U.S. 1116, 120 S.Ct. 1976, 146 L.Ed.2d 805 (2000).
            Officers Hogg and Rhodes testified that Appellant was unable to maintain a single lane and
failed to use his turn signal to warn of a lane change. Section 545.060(a) of the Transportation Code
provides:
(a) An operator on a roadway divided into two or more clearly marked lanes for
traffic: 
 
(1) shall drive as nearly as practical entirely within a single lane; and 
 
(2) may not move from the lane unless that movement can be made safely. 

Tex.Transp.Code Ann. § 545.060 (Vernon 1999). Section 545.104 provides as follows: 
 
(a) An operator shall use the signal authorized by Section 545.106 to indicate an
intention to turn, change lanes, or start from a parked position.
 
(b) An operator intending to turn a vehicle right or left shall signal continuously for
not less than the last 100 feet of movement of the vehicle before the turn.
 
(c) An operator may not light the signals on only one side of the vehicle on a parked
or disabled vehicle or use the signals as a courtesy or ‘do pass’ signal to the operator
of another vehicle approaching from the rear.

Tex.Transp.Code Ann. § 545.104. 

            Appellate courts have grappled with exactly when “lane weaving” justifies a stop. In
Hernandez v. State, 983 S.W.2d 867, 868-69 (Tex.App.--Austin 1998, pet. ref’d), a police officer
stopped the defendant after observing him swerve eighteen to twenty-four inches from the right lane
into the adjacent left lane of traffic. The swerve in question was characterized as a slow drift over
and back. Id. The court concluded that a single instance of crossing a lane dividing line by eighteen
to twenty-four inches into a lane of traffic traveling the same direction when the movement was not
shown to be unsafe or dangerous did not give an officer a reasonable basis for suspecting that the
defendant had committed a criminal traffic offense. Hernandez, 983 S.W.2d at 871. A violation
occurs only when a vehicle failed to stay within its lane and the movement was not safe or was not
made safely. Id.
            Similarly, in State v. Tarvin, 972 S.W.2d 910, 910-11 (Tex.App.--Waco 1998, pet. ref’d),
a police officer stopped the defendant after observing his car drift two or three times to the right side
of a two-lane road, causing his tires to go over the solid white line at the right-hand side of the road. 
Recognizing that mere weaving in one’s own lane of traffic can justify an investigatory stop when
that weaving is erratic, unsafe, or tends to indicate intoxication or other criminal activity, there was
nothing in the record to show that the officer there believed that to be the case. Id. at 912.
            And in State v. Cerney, 28 S.W.3d 796, 798 (Tex.App.--Corpus Christi 2000, no pet.), a state
trooper noticed the defendant’s car when it just barely swerved across the center line into the
trooper’s lane of traffic. The trooper was completing a citation at the time. Id. at 799-99. He then
made a U-turn, began to follow the defendant, and turned on the video camera in his car. Id. at 799. 
He observed the car swerve over the solid white line separating the traffic lane from the right
shoulder of the road three or four times. Id. While the testimony established that Cerney was
weaving somewhat within his own lane of traffic, there was no evidence that his actions were unsafe. 
Id. at 801. Consequently, the court concluded the evidence did not support a finding that the trooper
had a reasonable belief that the defendant had violated Section 545.060 of the Transportation Code
and that the trooper failed to articulate any other justification for stopping him. Id. The facts here
differ substantially.
            The officers were dispatched to investigate a report of a possibly intoxicated driver. We will
assume that the call came from an anonymous source since there was no evidence at trial offered as
to the identity or credibility of the caller. While an anonymous tip or telephone call may justify the
initiation of an investigation, it alone will rarely establish the level of suspicion required to justify
a detention. Alabama v. White, 496 U.S. 325, 329, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990); Davis
v. State, 989 S.W.2d 859, 863 (Tex.App.--Austin 1999, pet. ref’d). Normally, a police officer must
have additional facts before the officer may reasonably conclude that the tip is reliable and an
investigatory detention is justified. Davis, 989 S.W.2d at 863. An officer’s prior knowledge and
experience and his corroboration of the details of the tip may be considered in giving the anonymous
tip the weight it deserves. Id. at 864.
            The corroboration of details that are easily obtainable at the time the information is provided
and which do not indicate criminal activity will not lend support to the tip. Id. An accurate
description of a subject’s readily observable location and appearance will help the police correctly
identify the person whom the tipster means to accuse, but it does not show that the tipster has
knowledge of concealed criminal activity. Florida v. J.L., 529 U.S. 266, 272, 120 S.Ct. 1375, 146
L.Ed.2d 254 (2000). In this case, the officers’ discovery of Appellant in his maroon Taurus on
Interstate 30 did not give them any basis for crediting the tipster’s suspicion that the driver of the
vehicle was intoxicated. See Dowler v. State, 44 S.W.3d 666, 670 (Tex.App.--Austin 2001, pet.
ref’d).
            But Hogg and Rhodes testified to other observations that lent support to the tip. See Dowler,
44 S.W.3d at 670. Hogg saw Appellant’s car travel from the center lane, into the fast lane, back into 
the center lane and finally into the slow lane. This happened three or four times. Rhodes also
observed that Appellant was unable to maintain a single lane. Both officers observed that Appellant
failed to use his turn signal. Appellant failed to respond when Rhodes turned on his patrol car’s
emergency lights--Rhodes had to turn on his siren before Appellant pulled over. While none of the
observed conduct was criminal, even innocent acts can give rise to reasonable suspicion under the
proper circumstances. Woods, 956 S.W.2d at 38. Therefore, while the officers did not actually see
Appellant commit a moving violation, Appellant’s conduct and the inferences that experienced
officers could draw from Appellant’s conduct gave the officers reason to credit the anonymous tip. 
See Dowler, 44 S.W.3d at 670-71. We believe that the totality of the circumstances gave the officers
a reasonable, articulable basis for suspecting that Appellant was driving while intoxicated and for
detaining him to investigate their suspicion. 
            During oral argument, Appellant relied heavily upon the recent decision in Crawford v.
Washington, 541 U.S. ----, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), arguing that he has a
constitutional right to confront his accuser. He suggests that the anonymous caller was the accuser
and that the police officers testimony about the anonymous call constituted hearsay.
            In Crawford, the petitioner had been tried for assault and attempted murder for stabbing a
man who allegedly attempted to rape his wife. Id. at 1356. At trial, the State introduced a recorded
statement that the petitioner’s wife had made during police interrogation describing the stabbing,
even though the petitioner had no opportunity for cross-examination. Id. He argued that his Sixth
Amendment right of confrontation was violated. Id. The Supreme Court determined that the
Confrontation Clause applies to both in-court and out-of-court statements regardless of
admissibility of the statements under rules of evidence. Id. at 1364. Further, the right to confront
and cross-examine witnesses applies to those witnesses bearing testimony against the accused for
the purpose of establishing or proving some fact. Id. The Court decided that testimonial statements
by witnesses were barred under the Confrontation Clause unless the witness was unavailable and the
accused had a prior opportunity to cross-examine the witness. Id. at 1365. 
            Appellant asks us to apply Crawford to a DWI informant case. We decline the invitation and
conclude that Crawford has no application here. While it is true that officers would not have been
in the Appellant’s vicinity that evening without the tip, the officers did not pull Appellant over as
a result of the tip. The officers stopped Appellant due to his failure to maintain a single lane of
traffic, his failure to use his traffic signal, and his pattern of weaving. The fact that the anonymous
caller reported Appellant’s erratic driving did not amount to a testimonial statement as contemplated
by Crawford. The tipster’s statement was not admitted to show that Appellant was indeed driving
while intoxicated but to show how the officers happened to be in the area. The officers’ testimony
provided the factual basis for Appellant’s stop and the DWI charge against him. Accordingly, we
overrule Points of Error Nos. One and Two.
VOIR DIRE OF EXPERTIn Point of Error No. Three, Appellant complains that he was not allowed to conduct voir dire
examination to determine whether a witness was qualified to give an expert opinion. He also argues
that the State proffered Officer Rhodes as an expert on standard field sobriety tests and that he was
not allowed to conduct voir dire as required under Rule 705(b). He concludes that denial of voir dire
resulted in the admission of testimony from a person whose qualifications and ability to render an
opinion had not been determined.
Rule 705(b)
            Rule 705(b) provides as follows: 
Voir dire. Prior to the expert giving the expert’s opinion or disclosing the underlying
facts or data, a party against whom the opinion is offered upon request in a criminal
case shall, or in a civil case may, be permitted to conduct a voir dire examination
directed to the underlying facts or data upon which the opinion is based. This
examination shall be conducted out of the hearing of the jury.

Tex.R.Evid. 705. During the direct examination of Officer Rhodes, the State asked the officer
whether he had received any specialized training in detecting the signs of intoxication. Rhodes
answered that he had received standardized field sobriety testing. At this point, the defense objected:
Objection, your Honor. We believe that the state is trying to establish this witness
as an expert. We request at this time that the defense be allowed to voir dire the
witness. 

The trial court denied the request. Rhodes then went on to explain his training in sobriety testing. 
When the State again questioned him regarding his training on standardized field sobriety testing,
the defense objected a second time, asking to take the witness on voir dire. The trial court also
overruled this second request. Rhodes then described his training and the various sobriety tests used
and how the Appellant performed on those tests. 
            The State argues that Appellant failed to preserve error for appeal because defense counsel
never specifically referred to Rule 705(b) and never explained what matters he wanted to inquire
about on voir dire. In his brief, Appellant contends that he wanted to take the witness on voir dire
to establish his qualifications to testify concerning the signs of intoxication; the State counters that
counsel failed to object when the witness was testifying about the facts upon which he based his
opinion that Appellant was intoxicated.
            In order to preserve a complaint for appellate review, the record must show that Appellant
made a timely request, objection, or motion stating the grounds for the ruling desired with sufficient
specificity to make the trial court aware of the complaint. Tex.R.App.P. 33.1(a)(1)(A). An objection
is sufficient to preserve error if it calls the error to the trial court’s attention. The State asserts that
since Appellant admits in his brief that he wanted to take the witness on voir dire to test his
qualifications, he did not properly request a Rule 705(b) hearing. See Jenkins v. State, 912 S.W.2d
793, 814 (Tex.Crim.App. 1993). There, the court held that a request to take a witness on voir to
prove up his qualifications was not a request for a Rule 705(b) hearing to explore the underlying
facts or data of the expert’s opinion. See also Keim v. State, No. 07-00-0133-CR, 2000 WL
1827983, at *1 (Tex.App.--Amarillo Dec. 13, 2000, no pet.)(not designated for publication)(error
preserved where it was clear that defense counsel was not questioning a trooper’s expert
qualifications but instead questioned the underlying facts or data to support his opinion). Id.
            Our review of the record leads us to conclude that counsel was objecting to the officer’s
qualifications and not to the underlying facts or data to support the officer’s opinion. The first
objection was made right after the State asked Officer Rhodes what kind of training he had received. 
The second objection was lodged in response to the State’s questions about the officer’s specialized
training to conduct standardized sobriety testing and what that training involved. Because we
conclude that error has been waived, we overrule Point of Error No. Three and affirm the judgment
of the trial court.


August 12, 2004                                                          
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Panel No. 4
Barajas, C.J., Larsen, and McClure, JJ.

(Do Not Publish)