COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-04-336-CR

 

 

PAUL JOHN WALKER, JR.                                                     APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

         FROM
COUNTY CRIMINAL COURT NO. 2 OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I.      Introduction








A jury convicted Appellant
Paul John Walker, Jr., of driving while intoxicated, and the trial court
sentenced him to 120 days=
confinement, suspended for twenty months, and an $800 fine.  In three points, Appellant contends
that:  (1) the trial court abused its discretion
in denying his motion to suppress because the traffic stop violated article 1,
section 9 of the Texas Constitution and the Fourth Amendment of the United
States Constitution; (2) the trial court reversibly erred in admitting his
blood test results, violating Texas Rule of Evidence 403; and (3) the trial
court reversibly erred in admitting his blood test results without the
requested jury instruction, violating Texas Rule of Evidence 105(a).  In one cross point, the State contends that
the trial court erred in denying its request to include the per se definition
of intoxication in the jury charge.  We
affirm.

II.     Factual
and Procedural Background

On January 30, 2004,
Appellant filed a motion to suppress all evidence and testimony obtained
directly or indirectly by any law enforcement officers regarding a blood test
to which Appellant consented after his arrest for DWI.  Appellant based his motion on the contention
that the evidence was seized without a warrant in violation of the federal and
state constitutions as well as various statutes.  Subsequently, on February 5, 2004, Appellant
filed a supplemental motion seeking to suppress, among other things, all
evidence directly or indirectly obtained as a result of the traffic stop and
subsequent arrest on the basis that the traffic stop was made without a
warrant, probable cause, or reasonable suspicion under the federal and state
constitutions.  The trial court conducted
a hearing on February 17, 2004.  








The State called Trooper
Michael Windham as one of two witnesses. 
Trooper Windham testified that he was sitting in a patrol car on the
shoulder of U.S. 377 when he noticed Appellant=s Suburban approaching from behind. 
Trooper Windham stated that he observed the Suburban cross the white
shoulder line as it approached the patrol car and then swerve and cross the
center yellow lines as it passed the patrol car.  He decided to follow Appellant and at that
point activated his video camera. 
Trooper Windham stated that he noticed that Appellant=s driving improved, yet he continued to weave within his own lane;
therefore, Trooper Windham stopped him.  

Trooper Windham testified
that when he approached Appellant=s window, he detected the smell of alcohol and noticed that Appellant=s eyes were bloodshot.  He asked
Appellant if he had been drinking, and Appellant responded that he had had four
gins at the Palms Restaurant in Dallas. 
Trooper Windham then gave Appellant a written warning for failing to
drive in a single lane and asked him to step behind his Suburban to perform
several field sobriety tests.  Appellant
performed the horizontal gaze nystagmus test, the walk-and-turn test, and the
one-leg stand.  Trooper Windham testified
that Appellant performed poorly on all three of the tests; therefore, Trooper
Windham arrested him. 








Trooper Windham stated that
after he had taken Appellant to the sheriff=s office, he asked Appellant to submit to a breath test.  Trooper Windham testified that Appellant
refused and instead asked for a blood test. 
The State called Deborah Wolf, an emergency medical technician, level
paramedic, and certified phlebotomist, who testified that she drew a sample of
Appellant=s blood to
be sent for analysis. 








At the conclusion of the
hearing, the trial court granted Appellant=s motion to suppress his refusal of the breath test and all statements
Appellant made after his arrest in response to custodial interrogation;
however, the trial court denied the motion as to the blood test and any
evidence regarding the stop and subsequent arrest.  The trial court made findings of fact and
conclusions of law.  In its findings of
fact, the trial court found in pertinent part that ATrooper Windham observed the defendant=s vehicle driving on the improved shoulder while approaching Trooper
Windham=s vehicle@ and that ATrooper Windham observed the defendant=s vehicle cross the center lines multiple times in what Trooper Windham
believed to be an unsafe lane change or failure to maintain a single lane.@  In its conclusions of law, the
trial court held in pertinent part that Abased on the totality of the circumstances . . . Trooper Windham had
reasonable suspicion to stop the Defendant=s vehicle and was permitted to make a temporary investigative
detention of the defendant and probable cause to arrest the Defendant . . . for
. . . Driving While Intoxicated.@  

III.     Legality
of the Stop

In his first point, Appellant
contends that the trial court abused its discretion in denying his motion to
suppress because the traffic stop violated article 1, section 9 of the Texas
Constitution and the Fourth Amendment of the United States Constitution.  More specifically, Appellant argues that
because Trooper Windham believed that failure to drive in a single lane was a
traffic violation, he needed to have probable cause for the stop, and he did
not.  In the alternative, Appellant
claims that if Trooper Windham did not need probable cause for the stop, he at
least needed reasonable suspicion, which he also lacked here.  








Appellant does not
distinguish between his rights under the Texas Constitution and the United
States Constitution.  Therefore, we will
address only whether the trial court=s denial of his motion to suppress violated his rights under the
United States Constitution. See, e.g., Dewberry v. State, 4 S.W.3d 735,
743-44 (Tex. Crim. App. 1999) (addressing only whether defendant=s rights under the United States Constitution were violated because
defendant failed to distinguish his rights under the Texas Constitution from
those under the federal constitution and combined all four points into one
argument), cert. denied, 529 U.S. 1131 (2000); Hale v. State, 139
S.W.3d 418, 421 (Tex. App.CFort Worth 2004, no pet.) (analyzing defendant=s contention under the United States Constitution only because
defendant did not point out any distinction between his rights to confrontation
under the United States Constitution and the Texas Constitution); see also
Heitman v. State, 815 S.W.2d 681, 690 (Tex. Crim. App. 1991).








We review a trial court=s ruling on a motion to suppress evidence under a bifurcated standard
of review.  Carmouche v. State, 10
S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85,
89 (Tex. Crim. App. 1997).  In reviewing
the trial court=s decision,
we do not engage in our own factual review. 
Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); Best
v. State, 118 S.W.3d 857, 861 (Tex. App.CFort Worth 2003, no pet.).  The
trial judge is the sole trier of fact and judge of the credibility of the
witnesses and the weight to be given their testimony.  State v. Ross, 32 S.W.3d 853, 855
(Tex. Crim. App. 2000); State v. Ballard, 987 S.W.2d 889, 891 (Tex.
Crim. App. 1999).  Therefore, we give
almost total deference to the trial court=s rulings on (1) questions of historical fact and (2) application-of-law-to-fact
questions that turn on an evaluation of credibility and demeanor.  Johnson v. State, 68 S.W.3d 644,
652-53 (Tex. Crim. App. 2002); Guzman, 955 S.W.2d at 89;  Best, 118 S.W.3d at 861-62.  However, when the trial court=s rulings do not turn on the credibility and demeanor of the
witnesses, we review de novo a trial court=s rulings on mixed questions of law and fact.  Ford v. State, 158 S.W.3d 488, 493 (Tex.
Crim. App. 2005); Johnson, 68 S.W.3d at 652-53.  

When the sole witness at the
motion to suppress hearing is the arresting officer and the trial court files
findings of fact and conclusions of law, the only question before us is whether
the trial court properly applied the law to the facts it found.[2]  State v. Ballman, 157 S.W.3d 65, 69
(Tex. App.CFort Worth
2004, pet. ref=d) (citing Carmouche,
10 S.W.3d at 327-28); Guzman, 955 S.W.2d at 86-87, 89; James v. State,
102 S.W.3d 162, 169-79 (Tex. App.CFort Worth 2003, pet. ref=d)).  Because the trial court
entered findings of fact and conclusions of law and because those findings make
clear that the trial court accepted virtually all of Trooper Windham=s testimony, we must give that court almost total deference in
reviewing those historical facts found but review de novo the application of
the law to those facts.  See Ross,
32 S.W.3d at 856-58; Ballman, 157 S.W.3d at 69.








While a police officer must
have probable cause for a full custodial arrest, a mere stop of an individual
for the purposes of investigation does not require such substantial justification.  Terry v. Ohio, 392 U.S. 1, 20-22, 88
S. Ct. 1868, 1879-80 (1968).  Because a
temporary detention is considered a lesser intrusion than a custodial arrest, a
police officer may stop an individual if the officer has a reasonable suspicion
that the person is engaged in criminal activity.  Id. at 22; 88 S. Ct. at 1880; Woods
v. State, 956 S.W.2d 33, 35 (Tex. Crim. App. 1997).  The officer must have specific articulable
facts which, in light of his experience and personal knowledge, together with
inferences from those facts, would reasonably warrant the intrusion on the
freedom of the citizen detained for further investigation.  Terry, 392 U.S. at 21, 88 S. Ct. at
1880; Davis v. State, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997).  













In support of his contention
that the issue is one of probable cause rather than reasonable suspicion,
Appellant relies on State v. Rivenburgh, 933 S.W.2d 698 (Tex. App.CSan Antonio 1996, no writ); however, Rivenburgh is
distinguishable from the case before us. 
In Rivenburgh, Officer Morales testified that he stopped
Rivenburgh for the offense of disorderly conduct after he saw her make a vulgar
gesture with her middle finger and mouth an obscenity in her rearview
mirror.  Id. at 700.  However, Officer Morales subsequently arrested
Rivenburgh for driving while intoxicated. 
Id.  Rivenburgh moved to
suppress all evidence seized as a result of her arrest, contending that the
stop was conducted without a valid search warrant, probable cause, or
reasonable suspicion in violation of her constitutional rights.  Id. 
The trial court granted her motion. 
Id.  On appeal, the State
argued that the issue was whether Officer Morales had reasonable suspicion to
stop Rivenburgh to investigate.  Id.  The appellate court disagreed, stating that
the issue was whether Officer Morales had probable cause to arrest Rivenburgh
without a warrant.  Id.  The court reasoned that because Officer
Morales testified that he stopped Rivenburgh for the offense of disorderly
conduct, at the time of the stop, the offense had either occurred or it had notCnothing was left for Officer Morales to investigate.  Id. 
In the case before us, however, Trooper Windham testified that he
observed Appellant cross onto the shoulder of the highway as he approached the
parked patrol car from behind and then swerve and cross the center yellow lines
as he passed the patrol car.  Trooper
Windham further testified that he decided to follow Appellant and record
Appellant=s driving
because of the traffic violation and because Appellant might be driving
while intoxicated, falling asleep, or experiencing a medical problem.  As he followed Appellant, Trooper Windham
noticed that Appellant=s driving
improved, yet he continued to weave within his own lane.  Therefore, Trooper Windham decided to pull
Appellant over for failing to drive in a single lane and to see if he
was intoxicated.  Unlike Officer Morales
in Rivenburgh, Trooper Windham had further investigating to do.  See McClain v. State, No.
05-03-01785-CR, 2005 WL 225258, at *5 (Tex. 
App.CDallas Feb.
1, 2005, pet. ref=d) (not
designated for publication) (distinguishing Rivenburgh and holding issue
was one of reasonable suspicion rather than probable cause when the officer
decided to pull the appellant over for failing to drive in a single lane and
to see if he was intoxicated).








The reasonable suspicion
determination is based on the totality of the circumstances.  United States v. Sokolow, 490 U.S.1,
8-9, 109 S. Ct. 1581, 1585-86 (1989); Woods, 956 S.W.2d at 38.  Although an officer may lawfully stop and
detain a person for a traffic violation, no requirement exists that a
particular traffic regulation has been or is about to be violated for an
officer to have reasonable suspicion sufficient to justify a stop of a
vehicle.  Fox v. State, 900 S.W.2d
345, 347 (Tex. App.CFort Worth
1995), pet. dism=d as improvidently granted, 930 S.W.2d
607 (Tex. Crim. App. 1996); Gajewski v. State, 944 S.W.2d 450, 452 (Tex.
App.CHouston [14th Dist.] 1997, no pet.). 
Erratic or unsafe driving may furnish a sufficient basis for a
reasonable suspicion that the driver is intoxicated even absent evidence of
violation of a specific traffic law.  See
Cook v. State, 63 S.W.3d 924, 929 (Tex. App.CHouston [14th Dist.] 2002, pet. ref=d) (holding that while the appellant=s driving may not have constituted a traffic violation, it did provide
reasonable suspicion that the appellant was driving while intoxicated); McQuarters
v. State, 58 S.W.3d 250, 255 (Tex. App.CFort Worth 2001, pet. ref=d) (finding that even if the officer=s testimony failed to establish reasonable suspicion that the
appellant violated a traffic law, it did raise sufficient facts to justify a
stop based on reasonable suspicion that the appellant was intoxicated); Gajewski,
944 S.W.2d at 453 (finding that although the appellant=s driving may not have constituted a traffic violation, that did not
negate a stop based on reasonable suspicion that the appellant was intoxicated);
Fox, 900 S.W.2d at 347 (holding driver=s conduct sufficient to justify stop based upon reasonable suspicion
that something out of the ordinary was occurring even though no single act was
illegal).








As previously stated, Trooper
Windham testified that he believed Appellant might be intoxicated based on his
initial observation of Appellant driving onto the shoulder of the highway and
then crossing the center yellow lines of the road.  Trooper Windham=s suspicion of Appellant=s intoxication remained when Appellant continued weaving after Trooper
Windham began to follow him.  Therefore,
based on the totality of the circumstances, we conclude that Trooper Windham
had specific articulable facts, which taken together with rational inferences
from those facts, justified his reasonable suspicion that Appellant was driving
while intoxicated.  See Held v. State,
948 S.W.2d 45, 47, 51 (Tex. App.CHouston [14th Dist.] 1997, pet. ref=d) (holding officer=s observation of the appellant=s vehicle weaving randomly in and out of three lanes of traffic
sufficient to give rise to a reasonable suspicion that the appellant may have
been intoxicated); Davis v. State, 923 S.W.2d 781, 788 (Tex. App.CBeaumont 1996) (holding stop proper where officer testified he
suspected driver was intoxicated or tired based on weaving within lane), rev=d on other grounds, 947 S.W.2d 240 (Tex.
Crim. App. 1997); Fox, 900 S.W.2d at 347 (holding officer=s observation of the appellant=s vehicle speed fluctuating between 40 and 55 m.p.h. and weaving
within his own lane provided sufficient specific facts to create a reasonable
suspicion that some activity out of the ordinary was occurring or had
occurred); see also State v. Arend, No. 2-03-336-CR, 2005 WL 994710, at
*5 (Tex. App.CFort Worth
Apr. 28, 2005, pet. ref=d) (mem.
op.) (not designated for publication) (holding officer=s observation of the appellee=s vehicle weaving within his own lane and its continued weaving as the
officer followed the appellee for approximately forty-five to fifty seconds
provided specific articulable facts to justify officer=s reasonable suspicion that the appellee was driving while
intoxicated).








Appellant relies on State
v. Tarvin, 972 S.W.2d 910 (Tex. App.CWaco 1998, pet. ref=d), State v. Cerny, 28 S.W.3d 796 (Tex. App.CCorpus Christi 2000, no pet.), and Corbin v. State, 85 S.W.3d
272 (Tex. Crim. App. 2002), to support his position that Trooper Windham did
not have reasonable suspicion to justify the stop.  These cases are distinguishable.  In Tarvin, the court held that Tarvin=s weaving within his own lane of traffic did not provide a reasonable
suspicion of criminal activity.  Tarvin,
972 S.W.2d at 912.  However, the court
also noted that the officer who stopped Tarvin never testified that he was
conducting an investigatory stop, nor did he testify to suspecting any criminal
activity other than weaving out of the lane. 
Id.  Moreover, the court
stated, A[M]ere weaving in one=s own land of traffic can justify an investigatory stop when that
weaving is erratic, unsafe, or tends to indicate intoxication or other criminal
activity. . . .@  Id. 
Similarly, in Cerny, the court held that Cerny=s weaving somewhat within his own lane of traffic did not support a
finding that the officer had a reasonable belief that Cerny violated section
545.060 of the transportation code.[3]  Cerny, 28 S.W.3d at 801.  However, the court also noted that the officer
did not articulate any other justification for the stop.  Id. 
Here, Trooper Windham testified that one of the reasons for the stop was
that he believed Appellant might be intoxicated.  








Finally, in Corbin,
the court of criminal appeals held that the officer=s stop based on the exercise of his community caretaking function was
unreasonable.  Corbin, 85 S.W.3d
at 278.  The officer=s belief that the appellant was in need of assistance was unreasonable
based only upon appellant=s crossing
over the side stripe for only twenty feet and then continuing to drive
normally.  Id.  In the case before us, however, the State
does not argue that Trooper Windham=s community caretaking function was a basis for the stop of Appellant=s vehicle; rather, the State contends that the trooper had reasonable
suspicion that Appellant was driving while intoxicated. Therefore, we hold that
the trial court properly denied Appellant=s motion to suppress for lack of reasonable suspicion.  We overrule Appellant=s first point.

 

IV.    Admission
of Blood Test Results

In his second point,
Appellant contends that the trial court reversibly erred in admitting his blood
test results, violating Texas Rule of Evidence 403, and in his third point,
Appellant argues that the trial court reversibly erred in denying his request
for a jury instruction to accompany the admission of his blood test results,
violating Texas Rule of Evidence 105(a). 













Preservation of error is a
systemic requirement that this court should review on its own motion.  Martinez v. State, 22 S.W.3d 504, 507
n.7 (Tex. Crim. App. 2000); Hughes v. State, 878 S.W.2d 142, 151 (Tex.
Crim. App. 1993) (op. on reh=g), cert. denied, 511 U.S. 1152 (1994).  An
objection must be made as soon as the basis for the objection becomes
apparent.  Tex. R. Evid. 103(a)(1); Lagrone v. State, 942 S.W.2d
602, 618 (Tex. Crim. App.), cert. denied, 522 U.S. 917 (1997); Polk
v. State, 729 S.W.2d 749, 753 (Tex. Crim. App. 1987).  An early objection is just as fatal as a late
one.  See Johnson v. State, 977
S.W.2d 725, 728 (Tex. App.CFort Worth 1998, pet. ref=d) (op. on reh=g) (citing
Hon. Charles F. Campbell & William P. Green, Guidelines for Preserving
Error or How Not to Drop the Ball, 54 Tex.
B.J. 1178, 1180 (1991)).  To
preserve error, a party must continue to object each time the objectionable
evidence is offered.  Fuentes v. State,
991 S.W.2d 267, 273 (Tex. Crim. App.), cert. denied, 528 U.S. 1026
(1999); Ethington v. State, 819 S.W.2d 854, 858-59 (Tex. Crim. App.
1991).  A trial court=s erroneous admission of evidence will not require reversal when other
such evidence was received without objection, either before or after the
complained-of ruling.  Leday v. State,
983 S.W.2d 713, 718 (Tex. Crim. App. 1998); Johnson v. State, 803 S.W.2d
272, 291 (Tex. Crim. App. 1990), cert. denied, 501 U.S. 1259 (1991), overruled
on other grounds by Heitman, 815 S.W.2d at 681.  Furthermore, when evidence, which is
admissible as to one party or for one purpose but not admissible as to another
party or for another purpose, is admitted, the court, upon request, shall
restrict the evidence to its proper scope and instruct the jury accordingly;
however, in the absence of a timely request, Athe court=s action in
admitting such evidence without limitation shall not be a ground for complaint
on appeal.@  Tex.
R. Evid. 105(a); Hammock v. State, 46 S.W.3d 889, 893 (Tex. Crim.
App. 2001). 

        When
Appellant=s blood draw
kit, State=s Exhibit 6,
was offered into evidence, Appellant objected, arguing among other things that
its admission violated Rule 403 and, alternatively, that a limiting instruction
should be given along with its admission. 
However, when State=s Exhibit 7, the DPS crime lab report actually containing the evidence
of Appellant=s blood test
results, was subsequently admitted into evidence, Appellant did not object on
Rule 403 grounds nor did he request a jury instruction.  Therefore, we hold that Appellant forfeited
his arguments, and we overrule Appellant=s second and third points.

 

V.      Conclusion

Because we have overruled
Appellant=s three
points, we need not address the State=s cross point.[4]  We affirm the trial court=s judgment.

PER CURIAM

 

PANEL F:    GARDNER, J.; CAYCE, C.J.; and LIVINGSTON, J.

 








DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  February 16, 2006











[1]See Tex. R. App. P. 47.4.





[2]As
previously stated, Deborah Wolf, an emergency medical technician, level
paramedic, and certified phlebotomist, also testified at the motion to suppress
hearing; however, her testimony was limited to her participation in drawing a
sample of Appellant=s
blood for analysis.  Trooper Windham, the
arresting officer, was the only witness to testify at the motion to suppress
hearing regarding the reasonable suspicion issue. 





[3]Section
545.060(a) of the transportation code provides: 
A(a)
An operator on a roadway divided into two or more clearly marked lanes for
traffic:  (1) shall drive as nearly as
practical entirely within a single lane; and (2) may not move from the lane
unless that movement can be made safely.@  Tex.
Transp. Code Ann. '
545.060(a) (Vernon 1999).





[4]See Tex. R. App. P. 47.1.